PURCHASE *v.* GRAND RAPIDS REFRIGERATOR CO.

MASTER AND SERVANT—PERSONAL INJURIES—WORKMEN'S COMPEN-
SATION LAW.

> A laborer who received an accidental injury, in the course
> of his employment, to an eye which he had to have re-
> moved, was entitled to the weekly payments provided by
> the statute during 100 weeks, not merely for the period
> of his disability, although by an accident he had seriously
> impaired the sight of his eye previously so that he could
> only partly distinguish objects.

Certiorari to Industrial Accident Board. Submitted
October 9, 1916. (Docket No. 84.) Decided Decem-
ber 21, 1916.

Clarence C. Purchase presented a claim against the
Grand Rapids Refrigerator Company for partial in-
capacity resulting from the loss of an eye. From an
order awarding compensation, respondent brings cer-
tiorari. Affirmed.

*Francis D. Campau,* for appellant.

*Hatch, McAllister & Raymond,* for appellee.

As the result of an accidental injury to claimant's
right eye, it was removed. Compensation was allowed
as for the loss of an eye. The eye had previously been
injured. Claimant testified:

"The only trouble I ever had with my eye, when I
was a little better than four and a half years old, about
four years and nine months, I got a fork run through
this right eye, a fork tine, rather, and Dr. Gamber,
at Stanton, treated the eye and took care of it, and
otherwise the eye has never given me any trouble at
all from that time on, after it was healed up. I didn't
go to school until I was seven years old on account of

the injury to the eye.  The doctor said it was best on account of the strain to the eyesight.

"*Q.* How much of your vision was left in that eye?

"*A.* Just enough to distinguish daylight from dark, or tell an approaching object."

The medical testimony upon the subject received by the arbitration committee is in form a certificate, reading:

"On March 17, 1915, Mr. C. C. Purchase, an employee of the Grand Rapids Refrigerator Company, consulted me in reference to his right eye.  The history of the case is as follows:  On February 21, 1915, while at work he got hot sand in his eye, which resulted in an inflammation which was followed by traumatic glaucoma.  He also reported that when a child he was severely injured in the same eye.  On inspection I found the remains of a wound extending through the ciliary body with the iris grown down and adhered to the latter.  Mr. Purchase was suffering a great deal, and there was a great deal of bulging of the eye.  I advised him to go at once to the hospital, and, with the co-operation of the Grand Rapids Refrigerator Company, he went to the hospital on the same date that he first visited me.  I instituted treatment at once, but was unable to relieve his suffering.  On March 24, 1915, I done an Elliot Trephine with no results whatever.  The suffering continued.  The latter part of March I advised him to have the eye removed, for the reason that it might endanger the other eye, and that the vision was greatly reduced from the accident that he had when a child, so that he did not have much to lose and everything to gain.  On April 1, 1915, I removed the eye, since which time he has been under my observation and has made a good recovery.  On May 14, 1915, I examined his left eye, and found it in good condition, except for a slight degree of hyperopia, which I have corrected with glasses."

Apparently claimant can do the work he did and earn the wage he received before his eye was removed. He was 29 years old when he received the second injury to the eye.

It is the contention of plaintiff in certiorari that, while claimant was injured, and in consequence was for a period unable to work, he did not lose an eye, and the period of actual disability resulting from the injury is the measure of weekly compensation to which he is entitled. The argument in support of this contention is based principally upon the premises that the injured eye did not contribute to claimant's earning capacity, and its loss has not diminished it.

OSTRANDER, J. (*after stating the facts*). In *Hirschkorn* v. *Fiege Desk Co.,* 184 Mich. 239 (150 N. W. 851), claimant's eye was injured, vision being impaired nearly one-half. In *Cline* v. *Studebaker Corporation,* 189 Mich. 514 (155 N. W. 519), claimant's eye was injured; vision, if eyeglasses were used, being impaired one-half. Decision in these cases was not rested upon reasoning which can be made to apply to a case where claimant has lost an eye in which vision was impaired before the injury. In *Weaver* v. *Maxwell Motor Co.,* 186 Mich. 588 (152 N. W. 993, L. R. A. 1916B, 1276), claimant's left eye was destroyed—the vision lost—by the injury. Due to a previous injury, he could not see with his right eye, and after the last injury vision was limited in both eyes to a perception of light. It was held that total disability was not the result of the injury to the left eye, and that compensation should be limited to the amount fixed in the statute for the loss of one eye, because claimant lost only one eye in the particular employment.

Nature has generously furnished some organs of the body in pairs. A man can get along pretty well with one of them, as with one good eye, or ear, or lung, or kidney, and it is probable that most men, in most vocations, could and would earn quite as much with one of either of these organs removed. If a man with one good eye is able to earn as much as he would if pos-

sessed of two eyes, and loses, by accident, the remaining eye, it is actually that injury which wholly disables him from pursuing his previous vocation, since the previous loss of the other eye did not so disable him. This view, in the case last above cited, would have permitted claimant to receive compensation as for permanent total disability but for the fact that in all these cases the industrial accident board administers a law by the terms of which the board and the court are bound. The legislature has declared that the loss of both eyes (by the particular injury) shall constitute total and permanent disability, and that for the loss (by the particular injury) of one eye the compensation shall be 50 per cent. of the average weekly wages during 100 weeks. It will be perceived that a man with two eyes might lose one of them without affecting his capacity to earn wages except for a few days or weeks, and another, with but one good eye, might be by its loss totally disabled to earn anything in his usual vocation. In either case his compensation, under the law, would be the same. If such a result is regarded as unjust, in determining which the rights of the employer must be considered, the remedy must be administered by the legislature.

The legislature has not attempted a definition, or made a declaration, applicable to the case at bar, except in terms of the loss of an eye. It has not specified a normal eye, although it may be concluded that the law refers to an eye which performs in some degree the functions of a normal eye. A mere sightless organ might perhaps be considered no eye at all. Claimant has lost an eye, although an infirm one. It was not wholly useless as an eye. On the contrary, the testimony is that he could with it distinguish light and see approaching objects. As a result of the injury, there was disability, and the disability is "deemed to continue for the period specified, and the compensation so

paid for such injury shall be as specified. ❀ ❀ ❀⁹⁹
2 Comp. Laws 1915, § 5440.

The conclusion of the board will not be disturbed.
Defendant in certiorari will recover costs of this court.

STONE, C. J., and KUHN, BIRD, MOORE, STEERE, and
BROOKE, JJ., concurred. PERSON, J., did not sit.