Essex County Court of Common Pleas.

JOSEPH McCADDEN, PETITIONER-APPELLANT, v. WEST END BUILDING AND LOAN ASSOCIATION, A CORPORATION, RESPONDENT-APPELLEE.

Decided June 12, 1940.

For the petitioner-appellant, *David Roskein* (*Harry Cohn*).

For the respondent-appellee, *William B. McMichael*.

HARTSHORNE, C. P. J.    This case presents the issue whether the enucleation of an eye, whose sight had previously been largely destroyed, is "the loss of an eye" within the meaning of the Compensation act. *R. S.* 34:15-12 (s) ; *N. J. S. A.* 34:15-12 (s).

McCadden, employed as a janitor by respondent, was washing down some stairs with washing fluid, when some of it splashed into his left eye.   Due to the pain, he instinctively rubbed his eye with his wet hand (record, page 3).   The pain was so severe that he went to several doctors for treatment.   When the pain did not clear up after a few weeks, the eye was enucleated.

But some twenty-seven years previously, the sight of this eye had been very seriously affected when it was hit by a bolt. Evidently this accident had, unknown to petitioner, partially dislocated the lens, though this condition had caused him no pain in the interim, simply leaving his eye with badly impaired sight.

When seen by several doctors, subsequent to the recent accident, the eye was badly inflamed, the lens being found by the

later doctors, at least, to be totally dislocated. All apparently agree to the original partial dislocation, that same might become wholly dislocated in the course of time, but that trauma would definitely cause and hasten such permanent dislocation.

The medical men differ as to whether the splashing of the washing fluid here did cause the complete dislocation, though the doctor on whom the bureau largely relies in finding that it did not, admits that it might have. And such doctor evidently incorrectly assumed from the questions asked him that the complete dislocation pre-existed the recent accident (record, pages 69, 75). Since the loss of vision, and the ultimate enucleation of the eye, was due, not directly to the inflammation, but to the dislocation of the lens, such doctor naturally concluded that, since this dislocation pre-existed the accident, the accident could not have caused it.

But it stretches the imagination rather far to assume, that an entirely painless eye for twenty-odd years should suddenly, at the time of an accident, but without connection therewith, and by mere coincidence, become so painful as to require its enucleation. And if respondent's doctors are correct that the cause of complete dislocation was trauma, this factor appears in the petitioner's purely instinctive act, immediately after the accident, in rubbing his eye. Or, if petitioner's physicians are correct, the washing fluid itself is the causative factor. In either event, the accident was the natural and proximate cause of the total loss of the eye itself.

We now turn to the question of law, as to whether the surgical removal of an eye is "the loss of an eye" under the statute, despite the fact that the sight of that eye had been largely impaired previous to the accident in question. Note that this act, to be liberally construed, speaks in terms, not of the loss of vision, but of "the loss of an eye." And this provision (s) is surrounded by nineteen similar provisions, running from (d) through (v), all of which, with one exception, refer in so many words to the loss of a body member. This exception (u) refers to "the total loss of hearing in one ear," there being no express provision for the loss of an ear. Following this lengthy schedule of member losses, comes subdivision (w) covering "all lesser or other cases involving

permanent loss, or where the usefulness of a member or any physical function is permanently impaired." Doubtless, the loss of an ear, or a portion of a toe, for instance, would be considered a "loss" under (w), while a strictly functional disability, of partial permanent quality, would be an impairment of "usefulness." In other words, the word "eye" in (s) immersed amidst other members, refers to the body member, eye, and not to the function of vision, the loss of which is separately covered by subsection (w). Compare *Burbage* v. *Lee*, 87 *N. J. L.* 36; 93 *Atl. Rep.* 859; *Orlando* v. *Ferguson & Son*, 90 *N. J. L.* 553; 102 *Atl. Rep.* 155; *Combination Rubber Manufacturing Co.* v. *Obser*, 95 *N. J. L.* 43; 96 *Id.* 544; 115 *Atl. Rep.* 138; *Sigley* v. *Marathon Razor Blade Co.*, 111 *N. J. L.* 25; 166 *Atl. Rep.* 518; *Everhart* v. *Newark C. & D. Co.*, 119 *N. J. L.* 108; 194 *Atl. Rep.* 294.

The previously decided eye cases, whether with or without enucleation, are not to the contrary. While many of them refer to (s) or (v) in permitting recovery for a functional loss, this is due simply to the fact that in calculating such recovery under the functional subsection (w), it is necessary to refer, in an eye case, to (s) or (v) as the basis. *Feldman* v. *Braunstein*, 87 *N. J. L.* 20; 93 *Atl. Rep.* 679; *Vishney* v. *Empire Steel and Iron Co.*, 87 *N. J. L.* 481; 95 *Atl. Rep.* 143; *Orlando* v. *Ferguson & Son*, *supra; Purcell* v. *International Motor Co.*, 91 *N. J. L.* 707; 104 *Atl. Rep.* 894; *Combination Rubber Manufacturing Co.* v. *Obser*, *supra; Johannsen* v. *Union Iron Works*, 97 *N. J. L.* 569; 117 *Atl. Rep.* 639; *Sigley* v. *Marathon Razor Blade Co.*, *supra.*

In fact, the Workmen's Compensation Bureau has already held twice previously, that the enucleation of a partially sightless eye, constitutes the loss of an eye under the statute. *Cheatham* v. *O'Brien*, May 6th, 1939; *Russo* v. *Frank DiGiacomo & Co.*, December 19th, 1939.

And similar has been the construction throughout the United States, though, of course, the variant statutory provisions must be borne in mind. The courts have there held, with but few exceptions, that the loss of a totally or partially sightless eye, constitutes the loss of an eye. *Shaughnessy* v. *Diamond Iron Works (Minn)*, 208 *N. W. Rep.* 188; *Wareheim* v. *Melrose Co. (Minn.)*, 201 *Id.* 543; *Mosgaard* v.

*Minnesota Street Railway (Minn.)*, 201 *Id.* 545; *Thompson-Starrett Co.* v. *Ferguson (Ohio)*, 183 *N. E. Rep.* 47; *Purchase* v. *Grand Rapids Furniture Co. (Mich.)*, 160 *N. W. Rep.* 391; *Hayes* v. *Motor Wheel Corp. (Mich.)*, 208 *Id.* 44; *Liimatta* v. *Calumet & Hecla Mining Co. (Mich.)*, 201 *Id.* 204; *Justice* v. *Arkansas Flour Mills Co. (Kan.)*, 76 *Pac. Rep.* (2d) 802; *City of Shelbyville* v. *Kendrick (Tenn.)*, 29 *S. W. Rep.* (2d) 251; *Hobertis* v. *Columbia Shirt Co.*, 173 *N. Y. S.* 606; *Bervilacqua* v. *Clark*, 232 *Id.* 502; 250 *N. Y.* 589; *Leach* v. *Grangeville Highway Dist. (Idaho)*, 41 *Pac. Rep.* (2d) 618.

The only cases, even apparently to the contrary, are *Rye* v. *Chevrolet Motor Co. (Mich.)*, 201 *N. W. Rep.* 226; *Rector* v. *Roxana Petroleum Corp. (Okla.)*, 235 *Pac. Rep.* 183; *Quinn* v. *American International Shipbuilding Corp.*, 77 *Pa. Sup. Ct.* 304. But the statute involved in the first case, adhering to the above minority rule, contains no separate functional impairment section, such as exists in New Jersey. And the statutes involved in the last two cases specifically provide that the loss of an eye means the loss of vision, which the New Jersey act does not. Furthermore, this construction is quite consonant with the previously construed meaning of the New Jersey act, that it covers workmen of all ages and conditions of health, their awards to be governed, not by their pre-existing condition, but by the result of the compensable accident. *Bateman Manufacturing Co.* v. *Smith*, 85 *N. J. L.* 409; 89 *Atl. Rep.* 979; *Combination Rubber Manufacturing Co.* v. *Obser, supra; Bernstein Furniture Co.* v. *Kelly*, 114 *N. J. L.* 500; 177 *Atl. Rep.* 554; 115 *N. J. L.* 500; 180 *Atl. Rep.* 832; *Richardson* v. *Essex National Trunk, &c., Co., Inc.*, 119 *N. J. L.* 47; 194 *Atl. Rep.* 622.

Again the resulting hardship of imposing on the employer the same award, regardless of the state of vision, is a matter of policy, not of power. It is hence for the legislature to correct by either specific reference to loss of vision, by amplification of the One Per Cent. Fund act to cover partial permanent disabilities, or otherwise.

The determination of the bureau will, accordingly, be reversed, and a determination may be entered accordingly.