## STEPHEN J. KRAUSHAR, Claimant, v. CUMMINS CONSTRUCTION CORPORATION, ET AL.

[No. 29, January Term, 1942.]

*Decided April 9, 1942.*

The cause was argued before BOND, C. J., SLOAN, COLLINS, FORSYTHE, and MARBURY, JJ.

*Z. Townsend Parks, Jr.,* with whom was *Howard Calvert Bregel* on the brief, for the appellant.

*James A. Biddison, Jr.,* with whom was *Robert D. Bartlett* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Baltimore City Court, sitting without a jury, affirming the decision of the State Industrial Accident Commission disallowing the appellant compensation for the loss of an eye as provided by Article 101, Section 48, Code, 1939, and awarding appellant twenty-five weeks compensation for disfigurement. The appellant appeals for the purpose of reversing the decision of the State Industrial Accident Commission and the Baltimore City Court and seeks to obtain 100 weeks compensation provided in Article 101, Section 48, Code, 1939, *supra,* for loss of an eye.

The sole question to be decided by this court is whether the appellant under the provisions of the Workmen's Compensation Act, Article 101, Code, 1939, *supra,* should be allowed permanent partial disability by an award of compensation of 100 weeks for the loss of his right eye by removal. The facts of the case are contained in the following stipulation:

"It is stipulated by and between counsel in the above entitled case as follows:

"First: That the claimant, Stephen J. Kraushar, sustained an accidental injury on December 26, 1940, within the meaning and scope of the Workmen's Compensation Act of this State, and that as a result thereof his right eye was enucleated.

"Second: That some years prior to the above injury the claimant sustained an injury to the same right eye, for which he received no compensation; that at the time of the injury on December 26, 1940, he had approximately five per cent. vision in the said right eye.

"Third: That with the said right eye, prior to December 26, 1940, the claimant could distinguish forms of objects, distinguish bright colors, and was able to proceed about his home with his left eye (in which the vision was good) closed, using only the vision of his

right eye without bumping into furniture and other objects.

"Fourth: That the average weekly wage of the claimant at the time of said accident was fifty ($50.00) dollars.

"Fifth: That the claimant is entitled to temporary total disability at the rate of twenty ($20.00) dollars per week from January 2, 1941, to February 25, 1941, inclusive.

"Sixth: That the claimant is entitled to medical and hospital expenses in the total sum of one hundred forty-six ($146.00) dollars.

"Seventh: That the only issue raised by this appeal is whether the claimant is entitled to permanent partial disability for the loss of his right eye under the provisions of the Workmen's Compensation Act, and, if so, for how many weeks."

The Act of 1941 was not in effect at the time of this injury. Article 101, Section 48, Subsection 3, of the Code, 1939, *supra,* provides under (Permanent Partial Disability) :

"In case of disability partial in character but permanent in quality, the compensation shall be sixty-six and two-thirds per centum of the average weekly wages, * * * and shall be paid to the employee for the period named in the schedule as follows: * * *

"Eye—For the loss of an eye 100 weeks. * * *

"(Loss of Use.) Permanent loss of use of a hand, arm, foot, leg or eye shall be considered as the equivalent of the loss of such hand, arm, foot, leg or eye, and for the loss of the fractional part of the vision of either one or both eyes, the injured employee shall be compensated in like proportion to the compensation for total loss of vision, and in arriving at the fractional part of vision lost regard shall not be had for the effect that correcting lens or lenses may have upon the eye or eyes. * * *

"(Disfigurements.) For other mutilations and disfigurements, not hereinbefore provided for, compensation shall be allowed in the discretion of the commis-

sion, for not less than ten weeks nor more than one hundred weeks, as the commission may fix, in each case having due regard to the character of the mutilation and disfigurement as compared with mutilation and injury hereinbefore specifically provided for. * * *

"Whenever it shall appear that any disability from which any employee is suffering following an accidental injury, is due in part to such injury, and in part to a pre-existing disease or infirmity, the commission shall determine the proportion of such disability which is reasonably attributable to the injury and the proportion thereof which is reasonable attributable to the pre-existing disease or infirmity, and such employee shall be entitled to compensation for that proportion of his disability which is reasonably attributable solely to the accident, and shall not be entitled to compensation for that proportion of his disability which is reasonably attributable to the pre-existing disease or infirmity."

It is also provided by Article 101, Section 48, (1) (Permanent Total Disability) : "Whenever any person who has suffered the loss, or loss of use of a hand, arm, foot, leg or eye, shall enter into a contract of employment, it shall be permissible for the employee to waive in writing, either in the contract of employment, or by a saparate written instrument, any right to compensation to which he would be entitled because of the pre-existing permanent partial disability, in the event of subsequent accidental injury, and in such cases the employee so suffering an additional accidental injury, shall be entitled to the compensation for the disability resulting solely from such additional accidental injury. No such waiver shall be effective unless the pre-existing permanent partial disability shall be plainly described therein, nor unless the same be executed by the employee with knowledge of its contents prior to the time of the accident upon which the claim is based." No such waiver was entered into in the instant case.

Appellee contends that if the claimant had a normal eye with perfect vision and later suffered permanent loss

of part of the vision of that eye, he is entitled to permanent partial disability only to the extent of such loss of vision, and that if claimant had only partial vision in his eye and has the eye removed or loses the use of the eye, he is entitled to permanent partial disability only to the extent of the loss of vision in that eye.

Apparently there are no decisions in the Maryland courts on this question.

The New Jersey Statutes Annotated (N. J. S. A.), Title 34:15-12, are very similar to those in Maryland and provide: "Permanent total disability * * * Eye. (s) For the loss of an eye, sixty-six and two-thirds per cent. of daily wages during one hundred weeks. * * * Hearing. (u) * * * Both hands, etc. (v) Other cases. (w) In all lesser or other cases involving permanent loss, or where the usefulness of a member or any physical function is permanently impaired, the compensation shall be sixty-six and two-thirds per cent. of daily wages, and the duration of compensation shall bear such relation to the specific periods of time stated in the above schedule as the disabilities bear to those produced by the injuries named in the schedule. In cases in which the disability is determined as a percentage of total and permanent disability the duration of the compensation shall be a corresponding portion of five hundred weeks. Should the employer and employee be unable to agree upon the amount of compensation to be paid in cases not covered by the schedule, either party may appeal to the workmen's compensation bureau for a settlement of the controversy." The New Jersey case of *McCadden v. West End Building and Loan Association,* 1940, 18 N. J. Misc. 395, 13 A. 2d 665, 666, is very similar to the one now before us. However, as pointed out therein, the New Jersey statute does not specifically provide that the loss of an eye means the loss of vision, while the Maryland statute provides that loss of use of an eye is equivalent to the loss of an eye. In that case the plaintiff had sustained an injury to his left eye which caused its removal. Some years previous to that time he had sus-

tained an injury to the same eye on account of which its sight had been badly impaired. The New Jersey court said in that case:

"We now turn to the question of law, as to whether the surgical removal of an eye is 'the lost of an eye' under the statute, despite the fact that the sight of that eye had been largely impaired previous to the accident in question. Note that this act, to be liberally construed speaks in terms, not of the loss of vision, but of 'the loss of an eye.' And this provision (s) is surrounded by nineteen similar provisions, running from (d) through (v), all of which, with one exception, refer in so many words to the loss of a body member. This exception (u) refers to 'the total loss of hearing in one ear,' there being no express provision for the loss of an ear. Following this lengthy schedule of member losses, comes subdivision (w) covering 'all lesser or other cases involving permanent loss, or where the usefulness of a member or any physical function is permanently impaired.' Doubtless, the loss of an ear, or a portion of a toe, for instance, would be considered a 'loss' under (w), while a strictly functional disability, of partial permanent quality, would be an impairment of 'usefulness.' In other words, the word 'eye,' in (s) immersed amidst other members, refers to the body member, eye and not to the function of vision, the loss of which is separately covered by subsection (w). [Cases are cited here.]

"The previously decided eye cases, whether with or without enucleation, are not to the contrary. While many of them refer to (s) or (v) in permitting recovery for a functional loss, this is due simply to the fact that in calculating such recovery under the functional subsection (w), it is necessary to refer, in an eye case, to (s) or (v) as the basis. [Cases are cited here.]

"In fact, the Workmen's Compensation Bureau has already held twice previously that the enucleation of a partially sightless eye, constitutes the loss of an eye under the statute. *Cheatham v. O'Brien,* May 6, 1939; *Russo v. Frank DiGiacomo & Co.,* December 19, 1939.

492

"And similar has been the construction throughout the United States, though, of course, the variant statutory provisions must be borne in mind. The courts have there held, with but few exception, that the loss of a totally or partially sightless eye, constitutes the loss of an eye. *Shaughnessy v. Diamond Iron Works*, 166 Minn. 506, 208 N. W. 188; *Warheim v. Melrose [Granite] Co.*, 161 Minn. 275, 201 N. W. 543; *Mosgard v. Minnesota St. R. Co.*, 161 Minn. 318, 201 N. W. 545; *Thompson-Starrett Co. v. Ferguson*, 43 Ohio App. 169, 183 N. E. 47; *Purchase v. Grand Rapids Refrigerator Co.*, 194 Mich. 103, 160 N. W. 391; *Hayes v. Motor Wheel Corp.*, 233 Mich. 538, 208 N. W. 44; *Liimatta v. Calumet & Hecla Mining Co.*, 229 Mich. 41, 201 N. W. 204; *Justice v. Arkansas [City] Flour Mills Co.*, 147 Kan. 402, 76 P. 2d 802; *City of Shelbyville v. Kendrick*, 161 Tenn. 149, 29 S. W. 2d 251; *Hobertis v. Columbia Shirt Co.*, 186 App. Div. 397, 173 N. Y. S. 606; *Bervilacqua v. Clark*, 225 App. Div. 190, 232 N. Y. S. 502; Id., 250 N. Y. 589, 166 N. E. 335; *Leach v. Grangeville Highway Dist.*, 55 Idaho 307, 41 P. 2d 618.

"The only cases, even apparently to the contrary, are *Rye v. Chevrolet Motor Co.*, 229 Mich. 39, 201 N. W. 226; *Rector v. Roxana Petroleum Corp.*, 108 Okla. 122, 235 P. 183; *Quinn v. American International Shipbuilding Corp.*, 77 Pa. Super. 304. But the statute involved in the first case, adhering to the above minority rule, contains no separate functional impairment section, such as exists in New Jersey. And the statutes involved in the last two cases specifically provide that the loss of an eye means the loss of vision, which the New Jersey act does not. Furthermore, this construction is quite consonant with the previously construed meaning of the New Jersey act, that it covers workmen of all ages and conditions of health, their awards to be governed, not by their pre-existing condition, but by the result of the compensable accident. [Cases are cited here.]

"Again, the resulting hardship of imposing on the employer the same award, regardless of the state of

vision, is a matter of policy, not of power. It is hence for the Legislature to correct * * *."

As pointed out, the Michigan statute contains no separate functional impairment section as exists in New Jersey and in Maryland. The case of *Hayes v. Motor Wheel Corporation,* 233 Mich. 538, 208 N. W. 44, *supra,* was decided after the case of *Rye v. Chevrolet Motor Company,* 229 Mich. 39, 201 N. W. 226, *supra.* An examination of the case of *Hayes v. Motor Wheel Corporation, supra,* shows that the claimant had a defective eye caused by a previous injury which greatly impaired his vision in this eye, yet he had some vision and some use of the eye previously. In that case, the court confirmed the commission in making the full award. The Oklahoma statute, 85 O. S. 1941, Section 22, is similar to the Maryland statute in providing that "permanent loss of use of * * * eye, shall be considered as equivalent of the loss of * * * eye." In the case of *Rector v. Roxana Petroleum Corporation,* 108 Okla. 122, 235 P. 183, *supra,* the child at the age of seven years suffered an accidental injury to his right eye which caused almost a total loss of vision, and as a result thereof he could not use this eye for any practical purposes, but could detect light from darkness. The doctor testified that the eye was blind for all practical purposes. In that case the Oklahoma court denied him compensation for the subsequent loss of his eye. In the later case of *Gilmore Co. v. Booth,* 155 Okla. 195, 8 P. 2d 717, decided February 23, 1932, the claimant testified that he had 25 to 50 per cent. vision. It was not denied by the claimant that he had obscured vision in his right eye because of a cataract, doubtlessly caused by a former injury. In that case, the Oklahoma court sustained the commission in awarding him full compensation for loss of the eye. The Pennsylvania statute also provides compensation for serious and permanent disfigurement. In the Pennsylvania case of *Reigle v. Sholly,* 140 Pa. Super. 153, 14 A. 2d 166, decided in 1940, the court held that the claimant was entitled to full compensation for the loss of an eye

where the eye was actually removed although the eye previous to the injury was impaired by a cataract which could have been removed. The sight of the eye had been gradually impaired to a point where, at the time of the accident causing its removal, he did not have the use of the eye. Appellee in the instant case contends that the case of *Leach v. Grangeville Highway Dist.*, 55 Idaho 307, 41 P. 2d 618, 620, *supra,* is not in point because the statute provides for specific indemnity for loss of an eye by removal. The Idaho court said in that case: "Respondent is entitled to compensation, not because of loss of vision or of loss of earning power in consequence thereof. He is entitled to specific indemnity for the loss of his eye by enucleation, as provided for in I. C. A. Sec. 43-1113." We must, therefore, conclude that that case is not in point.

The Illinois statute contains a provision for disfigurement and also for permanent partial loss of sight of an eye. In the case of *Chicago Bridge & Iron Company v. Industrial Commission*, 316 Ill. 622, 147 N. E. 375, the defendant had 10 per cent. of vision when eye was removed. He had previously received compensation for the permanent loss of 90 per cent. of the use of the same eye resulting from another injury, incurred three years before, while in the employ of the same company. Employer contended that because only 10 per cent. of vision remained, its liability was limited to a payment for the loss of that fraction. The Illinois court said in that case: "Item 16 of Paragraph (e), Section 8 of the Workmen's Compensation Act (Smith-Hurd Rev. St. 1923, Ch. 48, Sec. 145) provides that the employee shall receive 'for the loss of the sight of an eye or for the permanent and complete loss of its use 50 per centum of the average weekly wage during 100 weeks.' There is no requirement in the act that the eye be perfect, nor is there any provision for reducing the amount of compensation in the proportion the vision is defective. The compensation fixed by the act is for the loss of a member of the body, and the same compensation is due

and payable whether the eye lost is the eye of a youth or of an old man, an eye with perfect vision or one imperfect by reason of natural defects or a previous injury. * * * It is impossible for any human agency to measure the value to an individual of the last 10 per cent. of vision remaining in his eyes. Whether the defect in vision is caused by disease or accident or is natural, the reduced amount of vision is all the vision the individual has, and when it is destroyed the use of his eye is destroyed. The Legislature has fixed an arbitrary amount to be paid as compensation in such cases, and that amount is due and payable whenever a functioning eye is lost, though the eye may be infirm." *Haas v. Globe Indemnity Company,* 16 La. App. 180, 132 So. 246, 249.

The New York statute provides that compensation for loss of binocular vision or for 80 per cent. or more of the vision of an eye shall be the same as for loss of the eye and also that compensation for permanent partial loss or loss of use of a member may be for proportionate loss or loss of use of the member. Appellee cites the case of *Ladd v. Foster Bros. Mfg. Co.,* Supreme Court of N. Y., June 19, 1923, 205 App. Div. 794, 200 N. Y. S. 258. In that case the board found that he had only light perception at the time of the injury and was sustained by the court in denying an award for loss of an eye. In that case the court sustained the State Industrial Board in denying an award for loss of an eye, and remitted it to the State Industrial Board for further consideration of the questions of disfigurement and loss of earning power. However, in the later case of *Bervilacqua v. Clark, et al.,* 225 App. Div. 190, 232 N. Y. S. 502, 503, the claimant at the time of the accident had normal vision of eye 20/60 of the theoretical normal eye and as a result of the accident, it was necessary to remove the eye. Three judges said in that case in holding that she was entitled to full compensation: "The reasoning in the Hobertis case is persuasive (page 398 of 186 App. Div., [173 N. Y. S. 607]): 'The claimant was working with defective vision. So far as

appears, her work was entirely satisfactory to her employer, at least so far as the wages she received. The wages received by her must be considered her wage-earning capacity with defective vision. She lost the use of her eye, such as she had, and is entitled to compensation therefor, based upon her earning capacity'." Two judges dissented in that case based on the previous decision in the case of *Ladd v. Foster Bros. Mfg. Co.,* *supra.*

The Tennessee court, in the case of *City of Shelbyville v. Kendrick,* 161 Tenn. 149, 29 S. W. 2d 251, 252, *supra,* where the petitioner had practically no vision in the eye previous to the injury and where the statute contained a specific provision of compensation for 100 weeks for the loss of an eye: "To sustain the contention of the employer would be to read into the schedule of awards in Subsection (c) of Section 28 of the Compensation Act the proviso that the awards scheduled should be proportionately reduced whenever the member involved had suffered a previous injury impairing its use. The Legislature did not so limit the schedule of awards, and we could not justify such limitation by judicial interpretation." As pointed out by appellee, in Tennessee there is no provision for disability due to pre-existing disease.

The case now before us is not without difficulty, the statutes being different in the various States. It must be concluded, however, that the weight of authorities elsewhere sustain the awarding of full compensation in the instant case of 100 weeks for the loss of an eye. 8 *A. L. R.* 1325; 73 *A. L. R.* 708; 99 *A. L. R.* 1502. In the case of *Purchase v. Grand Rapids Refrigerator Co.,* 194 Mich. 103 Mich. 103, 160 N. W. 391, 392, cited in the briefs of both the appellant and the appellee, the court said in awarding full compensation for the loss of an eye where the injured person had just enough vision to distinguish daylight from dark or tell an approaching object: "The Legislature has not attempted a definition, or made a declaration, applicable to the case

at bar, except in terms of the loss of an eye. It has not specified a normal eye, although it may be concluded that the law refers to an eye which performs in some degree the functions of a normal eye. A mere ·sightless organ might perhaps be considered no eye at all. Claimant has lost an eye, although an infirm one. It was not wholly useless as an eye. On the contrary, the testimony is that he could with it distinguish light and see approaching objects." This language seems appropriate here. We must also bear in mind what was said by this court in the case of *Lisowsky v. White,* 177 Md. 377, 382, 9 A. 2d 599, 601: "If there is a conflict in the Workmen's Compensation Law with respect to these questions of construction it seems to us that this should be resolved in favor of the claimant, otherwise that part of the statute which vouchsafes to him a certain sum of money resulting from a definite injury sustained by him as shown by established facts, would be nullified, and a construction giving to him a lesser sum would stand in its place. We can scarcely think the Legislature intended this to be." Article 101, Section 48 (1), *supra,* provides for a form of waiver. This was not entered into in the instant case. The removal of the right eye of appellant was a serious loss to him as the sight which remained in that eye, such as it was, constituted a precious possession. We therefore conclude that the claimant should receive for permanent partial disability compensation at the rate specified, $18 per week, for 100 weeks for the loss of an eye. He should also receive temporary total disability at the rate of $20 per week from January 2, 1941, to February 25, 1941, inclusive, and medical and hospital expenses of $146 as agreed to in the stipulation.

*Judgment reversed, with costs, and case remanded for further proceedings.*