HENDERSON v. CONSUMERS POWER CO.

1. WORKMEN'S COMPENSATION—NOTICE OF INJURY—FORM—PURPOSE.

Notice to an employer of an injury to an employee may be oral or written and must be of such a nature as reasonably to inform employer that employee has sustained a compensable accident, since the purpose of the notice is to give employer an opportunity to examine into the alleged accident while the

facts are accessible and also to employ physicians or surgeons to care for employee so as to speed his recovery and minimize the loss (2 Comp. Laws 1929, § 8431).

2. SAME—ACCIDENT—NOTICE.

The employer's knowledge of an accident is the equivalent of notice having been given by the employee (2 Comp. Laws 1929, § 8431).

3. SAME—LINEMAN—NOTICE OF INJURY—EVIDENCE.

In proceeding by lineman who fell from a pole and sustained injuries to head and neck and was unconscious for 24 hours to recover workmen's compensation for subsequent loss of vision of one eye where evidence shows that employer filed a noncompensable report of the accident a week after its occurrence, that hospital bill was charged to defendant, that superintendent and assistant superintendent of electrical division had called on plaintiff during his confinement at home, that plaintiff had been sent back to hospital for further treatment by doctor at employer's expense, and that when plaintiff returned to work several weeks later he was not given his skilled employment as a lineman but provided miscellaneous jobs *held,* to have established that defendant had the requisite notice or knowledge of the accident and injury within three months after happening thereof (2 Comp. Laws 1929, § 8431).

4. SAME—PAYMENT OF FULL WAGES—COMPENSABLE INJURY—REPORTS.

The practice of an employer in continuing to pay full wages to an injured employee during his confinement in a hospital or at home because of the injury does not excuse such employer from compliance with provisions of workmen's compensation act relative to the filing of report of a compensable injury (2 Comp. Laws 1929, § 8431).

5. SAME—REPORT OF COMPENSABLE INJURY.

An employer whose employee, because of his injury, was unable to return to work within seven days is required to file report of compensable injury (2 Comp. Laws 1929, § 8456).

6. SAME—REPORTS—STATUTE OF LIMITATIONS.

Filing a report of a noncompensable accident by an employer having full knowledge of the fact that it was a compensable accident, not a noncompensable one, is a failure to comply with the statutory requirement and deprives the employer of the benefit of the six-month and the two-year statute of limitations (2 Comp. Laws 1929, §§ 8431, 8456).

7. SAME—GENERAL STATUTE OF LIMITATIONS.

> General statute of limitations does not apply to proceeding brought under the workmen's compensation act before department of labor and industry since it is not a court and proceeding before it is not an action (3 Comp. Laws 1929, § 13976).

8. SAME—GENERAL STATUTE OF LIMITATIONS—REASONABLE TIME WITHIN WHICH TO COMMENCE PROCEEDINGS.

> While the general statute of limitations does not apply to proceedings brought under the workmen's compensation act, such proceedings must be commenced within a reasonable time, which by analogy to the statute of limitations will be deemed to be six years from the time that the claim for compensation accrues (3 Comp. Laws 1929, § 13976).

9. SAME—LOSS OF AN EYE—PERIPHERAL VISION.

> Peripheral or protective vision of an eye is industrial vision, as the term vision is used in determining liability for loss of an eye under the workmen's compensation act (2 Comp. Laws 1929, § 8426).

10. SAME—FINDING BY DEPARTMENT—EVIDENCE—LOSS OF EYE.

> In proceeding to recover statutory compensation for loss of an eye, the degree of injury to plaintiff's eye and when he lost his vision were questions of fact for determination by the department of labor and industry as trier of the facts, and its determination as a fact that plaintiff had peripheral vision which to him was industrial vision for nearly seven years after receiving injury will not be disturbed where there was ample testimony to support such finding (2 Comp. Laws 1929, §§ 8426, 8451).

11. SAME—STATUTORY SCHEDULE OF LOSS OF MEMBER—CLAIM FOR DISABILITY NOT RESULTING FROM LOSS OF MEMBER.

> A claim for a statutory schedule award for loss of a member, such as the loss of an eye, arm or foot, is separate and distinct from, and should not be confused with, a claim under the workmen's compensation act for disability not resulting in the loss of a member (2 Comp. Laws 1929, § 8426).

12. SAME—LOSS OF AN EYE—PERIPHERAL VISION.

> An injured employee whose eye was injured could not claim statutory schedule compensation "for loss of an eye" so long as he had protective or peripheral vision which to him was useful industrial vision (2 Comp. Laws 1929, § 8426).

13. SAME—LOSS OF AN EYE—PARTIAL VISION.

Loss of eye, within meaning of workmen's compensation act, does not require total loss of sight, so that, where sight is destroyed to extent that no vision useful in industry remains, eye is lost, even though some sight continues, but if any vision useful in industry remains, eye is not lost (2 Comp. Laws 1929, § 8426).

14. SAME—LOSS OF AN EYE—QUESTION OF FACT.

The loss of an eye, within the meaning of the workmen's compensation act, may be tested by the permanent loss of all vision adequate for industrial pursuits, and is primarily a question of fact to be determined from the testimony in the particular case.

15. SAME—CLAIM FOR COMPENSATION—LIMITATION OF ACTIONS—COMMENCEMENT—DATE OF DISABILITY.

The limitation period within which proceedings to recover workmen's compensation must be commenced runs from the time the claim for compensation accrues, not from the date of the injury but from the date of the resulting disability.

16. SAME—LOSS OF AN EYE—STATUTORY SCHEDULE—LIMITATION OF ACTIONS.

Plaintiff's claim for statutory schedule compensation "for loss of an eye" due to an injury occurring on December 24, 1930, which did not accrue until October 1, 1937, when he is found to have lost "industrial vision" therein was not barred by six-year limitation period where filed on December 23, 1940 (2 Comp. Laws 1929, § 8426).

17. SAME—FILING OF CLAIM AFTER 500 WEEKS FROM DATE OF INJURY.

Provision of workmen's compensation act that compensation could not be awarded for a period extending beyond 500 weeks from date of injury is not a statute of limitation for the filing of a claim for compensation but a limitation upon the period of time covered by an award; hence an award for compensation for loss of an eye for 100 weeks covering a period within 500 weeks from date of injury was proper although claim was filed after expiration of 500 weeks from date of injury (2 Comp. Laws 1929, § 8426).

18. SAME—COMPENSABLE PERIOD.

Compensation could not be awarded an injured employee for a period extending beyond 500 weeks from date of injury (2 Comp. Laws 1929, § 8426).

Appeal from Department of Labor and Industry. Submitted January 7, 1942. (Docket No. 29, Calendar No. 41,755.)   Decided May 18, 1942.

Arthur L. Henderson presented his claim against Consumers Power Company, employer, for compensation for loss of an eye while in defendant's employ. Award to plaintiff. Defendant appeals. Affirmed.

*Sessions & Warner,* for plaintiff.

*Arthur J. Paul,* for defendant.

STARR, J.   Defendant company appeals from an award of the department of labor and industry, granting plaintiff compensation for the loss of vision in his left eye, at the rate of $18 per week for 100 weeks, beginning October 1, 1937.

Plaintiff entered defendant's employ as a lineman in September, 1926. His duties, in part, consisted of putting up power lines which required "climbing poles, handling wire." It is admitted that his work was classified as skilled employment. On December 24, 1930, plaintiff, about 53 years old, while engaged in his regular work, fell from a pole sustaining injuries to his head and neck. He was taken to Hurley Hospital in Flint in an unconscious condition and did not regain consciousness for about 24 hours. He could not remember the circumstances of his accident, but recalled awakening in the hospital and suffering severe pain in his head and neck. He was attended by a physician who was paid by defendant company on a fee basis. Plaintiff's injury was diagnosed, as shown by the hospital record, as "concussion of the brain."

Plaintiff remained in the hospital for about two days and was then removed to his home and there

confined in bed for approximately two weeks. While confined at home he suffered severe headaches, became delirious at times, and noticed a blurring in his left eye. Prior to the accident plaintiff had been in a healthy and vigorous condition and had experienced no eye trouble.

During plaintiff's confinement at home a Mr. Clements, superintendent, and Mr. Bernathy, assistant superintendent of electrical work for defendant company, visited him. As soon as plaintiff was able to be up and walk around, defendant sent him to see Dr. Halligan, who had attended him while he was in the hospital.

On January 2, 1931, defendant filed a *noncompensable* report of the accident with the department of labor and industry, which stated in part:

"12. Nature and cause of injury—Fell from pole, injured back.

"13. Length of time lost by employee—No time lost.

"14. Date of return to work (left blank) * * *

"If said employee hereafter becomes entitled to compensation on account of said accident, a report will be immediately made by us under rule 'B'.

"Date of this report—December 31, 1930."

After several weeks' confinement at home plaintiff returned to work, but because of defective vision in his left eye, he was never thereafter able to perform his former duties as a lineman. He was given miscellaneous jobs, such as making collections, working on the payroll, and hunting and cutting off "jumpers"—a term applied to persons stealing electricity. However, so far as the record shows there was no reduction in the amount of his wages.

Plaintiff continued to have trouble with his left eye and suffered severe headaches. In May, 1931, an assistant superintendent of defendant company

sent plaintiff to see a Dr. Jefferson, who referred him to Dr. Roberts, an eye specialist. Dr. Roberts found that plaintiff had only light perception or protective vision (sometimes referred to as peripheral or industrial vision) in his left eye. In 1935 plaintiff, at the suggestion of an official of defendant company, made five trips to Niles, Michigan, to consult with Dr. Bonine, an eye specialist. Plaintiff's defective vision continued until about October 1, 1937, when his left eye became completely blind.

In October, 1931, plaintiff told Mr. Scott Dickson, assistant to the general manager of defendant company in Flint, that he was losing the sight of his left eye and that he thought he should have compensation. Plaintiff testified regarding his conversation with Mr. Dickson, as follows:

"*Q.*   *  *  *  Did you ever tell anyone in authority at the Consumers Power Company about the trouble you were having with your eye?

"*A.*   I did.

"*Q.*   Whom did you tell?

"*A.*   Scott Dickson (assistant to the general manager).   *  *  *

"*Q.*   I see. How did you happen to be talking to him?

"*A.*   Well, I was afraid they would be laying me off because I could not see good, so I went in and said to him, 'I am losing the sight of my eye,' I said, 'it is no good to me now as far as working and the like of that,' and I said, 'I think I should have compensation for it because,' I said, 'I know, realize, they don't usually keep a fellow on if he could not see good for this work.' *  *  * 'Art,' he said, 'this is going to be kind of bad for some fellows here,' he said, 'and we don't want any trouble.' He said, 'As long as you want any work, you can have work for the Consumers Power Com-

pany,' if I just wanted to work, and I said, 'If I knew that it was all right,' 'Well,' he said, 'you don't know of anyone they have ever been mean with.' So I went on to work.   *   *   *

"*Q.* Well, did this assistant general manager, that you talked to, say anything about not making a claim at that time for the loss of the eye?

"*A.* Well, he said if it would implicate some fellows that had not properly made reports, he said, 'You wouldn't want to cause me,—trouble to anyone?' and I said, 'No; I never made anyone trouble and I don't want to.'

"*Q.* What was the result of your conversation, so far as whether or not you were going to make claim for the loss of the eye?

"*A.* I just walked out, I went on to work; I never heard any more about it.

"*Q.* Did he say anything? State whether or not he said anything to you about what might happen if the claim,—if you made a claim for the loss of the eye?

"*A.* 'Well,' he said, 'you know, if you make claim, make any trouble around here,' he said, 'after they pay your compensation they can lay you off,' and he said, 'you are gone.'

"*Q.* But did he at that time tell you if you did not make any claim for the loss of your eye that you would have a job as long as you wanted to work?

"*A.* He did.   *   *   *

"*Q.* State whether or not this conversation you just related was the reason why you did not sooner make a claim for the loss of your eye?

"*A.* It was. I supposed I would have work as long as I wanted it."

In September, 1938, plaintiff was laid off and his wages paid until October 1st. Thereafter he went to the assistant to the chief clerk of defendant com-

pany and requested compensation for his left eye. The next day he was called back to work. Regarding this incident plaintiff testified:

"*Q.* When did they discharge you?
"*A.* Well, they laid me off once from the 15th of September in 1938, and they paid me up until the 1st of October, and I went in to see when I was going to go back to work. I have (had) been in a couple of different times, then I went in another morning and I did not find Mr. Crawley in, so I went in and talked to Bob Ervine; I worked for Bob Ervine five years, I went in to talk to him, 'If they think I am going to walk off and say nothing they are wrong, because I was to have work for I have to live.' I told him that if they figured I was going to walk off and say nothing they were off, because I was going to have pay for my eye for I had to live,—my work; and the next morning I was called to report to work."

Plaintiff remained in defendant's employ until he was discharged in July, 1940. On December 23, 1940, plaintiff filed with the department of labor and industry a claim for "compensation and medical expense in accordance with the statute" for "serious head injuries which subsequently caused loss of left eye." Defendant filed denial and also supplemental denial of liability.

Upon hearing before a deputy commissioner plaintiff was awarded compensation of $18 per week for 100 weeks, beginning October 1, 1937. Such award was the statutory schedule of compensation for the "loss of an eye" (2 Comp. Laws 1929, § 8426 [Stat. Ann. § 17.160]). On review the award of the deputy commissioner was affirmed by the department, the opinion stating in part:

"We specifically find that plaintiff sustained an accidental injury arising out of and in the course of his employment with defendant as lineman on

December 24, 1930, resulting in concussion of the brain; that said accident caused the loss of vision in his left eye on or about October 1, 1937; that from the date of the accident until October 1, 1937, plaintiff had peripheral or protective vision, which, as a matter of law, is useful vision in industry; that the report of noncompensable accident filed with the department on January 2, 1931, was an improper report and therefore the statute of limitations in the workmen's compensation act did not run against plaintiff's claim for compensation; that these proceedings, started within six years from the date of the loss of the eye, are timely; and further, that defendant's action, after it knew plaintiff had lost the sight of his eye as a result of the accident, in lulling him to a false sense of security extending until the expiration of the 500-week period, cannot be condoned.''

Defendant, having obtained leave to appeal, contends:

That plaintiff gave no notice to defendant that his accident of December 24, 1930, caused any injury to his left eye or surrounding nerves.

That a claim was not made within the statutory period as set up in the workmen's compensation act.

That claim was not made within the period set up by the general statute of limitations.

That claim for compensation was made more than 500 weeks from the date of the accident; therefore, the department of labor and industry does not have jurisdiction.

The first question is whether defendant had notice of plaintiff's injury as required by 2 Comp. Laws 1929, § 8431 (Stat. Ann. § 17.165), which provides, in part:

''No proceedings for compensation for an injury under this act shall be maintained, unless a notice

of the injury shall have been given to the employer within three months after the happening thereof.''

Section 8432, 2 Comp. Laws 1929 (Stat. Ann. § 17.166), provides for written notice of the injury to the employer. Section 8434, 2 Comp. Laws 1929 (Stat. Ann. § 17.168), provides, in part:

''Want of such written notice shall not be a bar to proceedings under this act, if it be shown that the employer had *notice or knowledge* of the injury.''

The purpose of notice, within three months, to the employer was pointed out in *Littleton* v. *Railway Co., Inc.*, 276 Mich. 41, 45, where we said:

''The provision of the law that timely notice must be given is purposeful and while no niceties of expression are required and the notice may be oral or written, it must be of such a nature so as reasonably to inform the employer that the employee has sustained a compensable accident. * * * The purpose of the notice is to give the employer an opportunity to examine into the alleged accident and injury while the facts are accessible and also to employ skilled physicians or surgeons to care for the employee so as to speed his recovery and minimize the loss. See *Podkastelnea* v. *Railroad Co.*, 198 Mich. 321; *Herbert* v. *Railway Co.*, 200 Mich. 566; *Johnson* v. *Bergland Lumber Co.*, 231 Mich. 34.''

In *Mauch* v. *Bennett & Brown Lumber Co.*, 235 Mich. 496, 499, we stated:

''The importance of the notice of injury is that the employer may have opportunity for investigation while the facts are accessible. *Armstrong* v. *Oakland Vinegar & Pickle Co.*, 197 Mich. 334. * * * But, while the plaintiff's notice of injury was inaccurate, the employer had notice that plaintiff claimed of the freezing and accidental personal injury under the act and sought compensation there-

for.  *  *  *  It was at least sufficient to put the employer on inquiry.''

We have recognized that knowledge of an accident is the equivalent of notice. *Clifton* v. *Chrysler Corporation,* 287 Mich. 87; *Littleton* v. *Railway Co., Inc., supra; Sweet* v. *Gale Manufacturing Co.,* 289 Mich. 259. The record shows that on January 2, 1931, defendant filed a *noncompensable* report, dated December 31, 1930, of the accident. Such report stated that on December 24, 1930, plaintiff "fell from pole, injured back." In its brief defendant admits that "Plaintiff was hospitalized for a few days and then confined to his bed at home for about two weeks." The hospital bill was charged to defendant. Within two weeks after the accident the superintendent and assistant superintendent of the electrical division or "side" of defendant company visited plaintiff while he was confined at home. As soon as plaintiff was able to walk, defendant sent him to see Dr. Halligan. When plaintiff returned to work several weeks after the accident, defendant did not place him at his former skilled employment as a lineman, but gave him miscellaneous jobs.

We conclude that the testimony satisfactorily establishes that defendant had the requisite "notice or knowledge" of plaintiff's accident and injury within three months after the happening thereof.

Defendant next contends that plaintiff's claim for compensation, filed with the department nearly 10 years after the accident, is barred by both the six-month and the two-year limitation prescribed in 2 Comp. Laws 1929, § 8431 (Stat. Ann. § 17.165), which provides, in part:

"No proceedings for compensation for an injury under this act shall be maintained,  *  *  *  unless the claim for compensation with respect to such

injury, which claim may be either oral or in writing, shall have been made *within six months* after the occurrence of the same; &ast; &ast; &ast; Provided, however, That in all cases in which the employer has been given notice of the injury, or has notice or knowledge of the same within three months after the happening thereof, but the actual injury, disability or incapacity does not develop or make itself apparent within six months after the happening of the accident, but does develop and make itself apparent at some date subsequent to six months after the happening of the same, claim for compensation may be made within three months after the actual injury, disability or incapacity develops or makes itself apparent to the injured employee, but no such claim shall be valid or effectual for any purpose unless made *within two years* from the date the accidental personal injury was sustained.''

Section 8431, 2 Comp. Laws 1929 (Stat. Ann. § 17.165), further provides:

''That in all cases in which the employer has been given notice of the happening of the accident, or has notice or knowledge of the happening of said accident, within three months after the happening of the same, and *fails, neglects or refuses to report* said accident to the industrial accident board &ast; *as required by the provisions of this act, the statute of limitations shall not run against the claim of the injured employee* or his dependents, or in favor of either said employer or his insurer, until a report of said accident shall have been filed with the industrial accident board.'' &ast;

The question is: Did defendant *fail, neglect or refuse to report* plaintiff's accident as required by 2 Comp. Laws 1929, § 8456 (Stat. Ann. § 17.191), which provides, in part:

---

&ast; The powers and duties of the industrial accident board have been transferred to the department of labor and industry and the board abolished. See 2 Comp. Laws 1929, § 8312 (Stat. Ann. § 17.3).— REPORTER.

"Slight injury; noncompensable accidents. (a) In all cases in which the injured employee is injured so slightly that he loses no time, or little time, or returns to work within seven days, the employer shall on the eighth day after the occurrence of the accident make and send to the industrial accident board* a report of said accident.   *   *   *   All noncompensable accidents shall be reported by the employer under this subdivision of this section. *If any accident reported under this subdivision as a noncompensable accident shall later prove to be a compensable accident, the employer shall as soon as he learns the same to be a compensable accident make a report of the same under subdivision (b) below, and shall state in said report the fact that said accident was previously erroneously reported as a noncompensable accident.*"

Section 8456, 2 Comp. Laws 1929 (Stat. Ann. § 17.191), further provides:

"Compensable Accidents.   (b) In all cases in which the employee is injured to such an extent that he *does not return to work within seven days* after the accident, and in all cases in which the disability of the injured employee continues for more than seven days after the accident, *   *   *   the employer shall report said accident to the industrial accident board,* at Lansing, Michigan, on the eighth day after the accident, in the manner hereinafter stated." (The act then specifies the information to be given in such compensable report.)

It is undisputed that plaintiff was not able to return to work *within seven days after the accident.* Defendant admits in its brief that "plaintiff was hospitalized a few days and then confined to his bed at home for about two weeks." The testimony shows that plaintiff was disabled and unable to return to work for several weeks after the accident. Despite knowledge to the contrary, defendant, on

---

* See footnote, *ante,* p. 576.—Reporter.

January 2, 1931, more than eight days after the accident, filed a *noncompensable* report, stating that plaintiff had *lost no time.* Defendant did not at any time thereafter file a compensable report of the accident as required by the above-quoted statute. Defendant endeavors to excuse its failure to file a proper compensable report, on the ground that it had paid plaintiff full wages during his confinement in the hospital and at home and that the general practice among employers was to file a noncompensable report if no pay time was lost by the injured employee. If there was a general practice among employers as claimed by defendant, such practice did not excuse defendant from compliance with the terms of the statute.

When plaintiff, because of his injury, was unable to return to work within seven days after the accident, defendant company was then required to file a compensable report. The filing of a noncompensable report, with knowledge that the accident was compensable, was a failure to comply with the above-quoted statute. The department was correct in its finding that defendant's noncompensable report of the accident, filed January 2, 1931, was not a proper report. In *Pritchard* v. *Ford Motor Co.,* 276 Mich. 246, 249, Mr. Justice NORTH said:

"Filing a report of a noncompensable accident by an employer having full knowledge of the fact that it was a compensable accident, not a noncompensable one, is a failure to comply with the statutory requirement and deprives the employer of the statutory limitations."

We conclude that defendant's failure to comply with the statute deprived defendant of the benefit of the six-month and the two-year statute of limitations above quoted.

Defendant further contends that plaintiff's claim for compensation, not having been filed for nearly

10 years after the accident, is barred by the six-year statute of limitations, which by analogy has been applied to proceedings for compensation. In *Hajduk* v. *Revere Copper & Brass, Inc.,* 268 Mich. 220, 223, this court said:

"While the general statute of limitations has no application in the instant case because the department of labor and industry is not a court and a proceeding before it is not an action, yet we can conceive of no reason why there should not be a limit of time within which a proceeding for compensation should be commenced. That limit of time must be a reasonable one, which by analogy to the statute of limitations will be deemed to be six years."

See, also, *Ardelian* v. *Ford Motor Co.,* 272 Mich. 117; *Stone* v. *Ford Motor Co.,* 272 Mich. 139; *Henry* v. *Ford Motor Co.,* 273 Mich. 323; *Oado* v. *Ford Motor Co.,* 273 Mich. 510.

The question is: Did the six-year statute of limitations begin to run from the date of the accident, December 24, 1930, or from October 1, 1937, when plaintiff's left eye became totally blind?

The testimony shows that plaintiff had peripheral or protective vision in his left eye until October 1, 1937. Such vision has been held to be industrial vision. *Powers* v. *Motor Wheel Corporation,* 252 Mich. 639 (73 A. L. R. 702). The degree of injury to plaintiff's eye and when he lost his vision were questions of fact for determination by the department as the trier of the facts. *Hayes* v. *Motor Wheel Corporation,* 233 Mich. 538; *Powers* v. *Motor Wheel Corporation, supra; Liimatta* v. *Calumet & Hecla Mining Co.,* 229 Mich. 41; *Banker* v. *Chevrolet Motor Co.,* 244 Mich. 1. The department determined as a fact that until October 1, 1937, plaintiff had peripheral or protective vision in his left eye which to him was useful industrial vision. There was testimony amply supporting this finding by the

department, and, therefore, we will not disturb it. *Hayes* v. *Motor Wheel Corporation, supra; Banker* v. *Chevrolet Motor Co., supra;* 2 Comp. Laws 1929, § 8451 (Stat. Ann. § 17.186).

Section 8426, 2 Comp. Laws 1929 (Stat. Ann. § 17.160), providing a schedule of compensation for specific injuries, states, in part:

"In cases included by the following schedule the disability in each such case shall be deemed to continue for the period specified, and the compensation so paid for such injury shall be as specified therein, to-wit:   *   *   *

"For the loss of an eye, 66⅔ per centum of average weekly wages during 100 weeks."

Plaintiff's claim for such statutory schedule of compensation for "loss of an eye" did not *accrue* until the protective or peripheral vision, which was useful as industrial vision, was completely lost on October 1, 1937, as determined by the department. The general statute of limitations, 3 Comp. Laws 1929, § 13976 (Stat. Ann. § 27.605), provides:

"All actions in any of the courts of this State shall be commenced within six years next after the causes of action shall *accrue,* and not afterward, except as hereinafter specified."

It should be kept in mind that a claim for a statutory schedule award for loss of a member, such as the loss of an eye or an arm or a foot, under 2 Comp. Laws 1929, § 8426, is separate and distinct from, and should not be confused with, a claim under such statute for compensation for disability not resulting in the loss of a member. We have often recognized the distinction between the two types of disability under the compensation law. *Powers* v. *Motor Wheel Corporation, supra; Crane* v. *Ætna Portland Cement Co.,* 234 Mich. 110; *Hirschkorn* v.

*Fiege Desk Co.*, 184 Mich. 239.  See, also, *Purchase
v. Grand Rapids Refrigerator Co.*, 194 Mich. 103;
*Liimatta* v. *Calumet & Hecla Mining Co., supra.*

In the present case plaintiff did not claim for
compensation for his injury, diagnosed as "concus-
sion of the brain," or injuries to his eye or neck,
under the general provisions of the compensation
law, because he was paid his full wages during his
confinement in the hospital and at home.  Plaintiff's
claim, as determined by the department, is for the
statutory schedule award of compensation for 100
weeks "for loss of an eye."  He could not claim
the schedule compensation for "loss of an eye" so
long as he had protective or peripheral vision which
to him was useful industrial vision.  The depart-
ment determined that he had such industrial vision
until October 1, 1937.  In *Powers* v. *Motor Wheel
Corporation, supra*, p. 644, Mr. Justice FEAD said:

"Where sight is destroyed to the extent that no
vision useful in industry remains, the eye is lost,
even though some sight continues.  But if any vision
useful in industry remains, the eye is not lost.  *Pur-
chase* v. *Grand Rapids Refrigerator Co.*, 194 Mich.
103; *Stammers* v. *Banner Coal Co.*, 214 Mich. 215;
*Liimatta* v. *Calumet & Hecla Mining Co.*, 229 Mich.
41; *Hayes* v. *Motor Wheel Corp.*, 233 Mich. 538;
*Crane* v. *Ætna Portland Cement Co.*, 234 Mich. 110;
*Banker* v. *Chevrolet Motor Co.*, 244 Mich. 1."

In *Liimatta* v. *Calumet & Hecla Mining Co., supra*,
p. 46, we stated:

"Unquestionably the loss of an eye within the
meaning of the act may be tested by the permanent
loss of all vision adequate for industrial pursuits.
Primarily it is a question of fact to be determined
from the testimony, and it would therefore be diffi-
cult to lay down any fixed rule of law to guide the
determination."

We have established the rule, in applying the analogy of the six-year statute of limitations to workmen's compensation cases, that the six-year period shall run from the time the claim for compensation accrues. In other words, the limitation period does not run from the date of the injury, but runs from the date of the resulting disability, which in the present case was October 1, 1937. In *Napolion* v. *Concrete Metal Forms Corp.*, 279 Mich. 668, in which the employee's claim was filed more than six years after the injury, but less than six years from the date of the resulting disability, Mr. Justice BUTZEL said, p. 675:

"The question of from what time the six-year limitation should run is squarely before us. Notwithstanding some dicta in previous cases, where the time of injury was apparently considered the same as the time of disability, we hold that the six-year limitation shall begin from the time that the claim for compensation accrues, which under the compensation act is the time when the disability arises from the injury. Plaintiff brought his suit within six years from the time that the disability appeared and therefore is not barred by the six-year rule."

Plaintiff's claim for the statutory schedule compensation "for loss of an eye" did not accrue until October 1, 1937, and he filed his claim for such schedule compensation on December 23, 1940, which was well within the six-year period following such accrual. Therefore, plaintiff's claim was not barred by the six-year limitation period.

Defendant also contends that, because plaintiff's claim was filed more than 500 weeks after the date of the injury, the department did not have jurisdiction to hear and determine the claim. Defendant bases such contention upon the following statutory provision:

"While the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid as hereinafter provided, to the injured employee a weekly compensation equal to 66⅔ per centum of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than $18 a week; and in no case shall the *period covered by such compensation* be greater than 500 weeks from the date of the injury." 2 Comp. Laws 1929, § 8426 (Stat. Ann. § 17.160).

It is clear that such provision only limits the "period covered by such compensation" to 500 weeks from the date of the injury. In other words, under such provision an employee would not be entitled to compensation covering a period beyond 500 weeks from the date of the injury. Compensation could not be awarded *for a period* extending beyond the 500 weeks. The test is whether the period covered by the award is within the 500-week period. Such statute is not a statute of limitation for the filing of a claim for compensation; it is a limitation upon the period of time covered by an award. *Kiviniemi* v. *Quincy Mining Co.*, 286 Mich. 680; *Willard* v. *Globe Housewrecking Co.*, 294 Mich. 42.

In the present case plaintiff's schedule award of compensation for "100 weeks" beginning October 1, 1937, *covered a period* within 500 weeks from the date of the injury, December 24, 1930.

The award is affirmed, with costs to plaintiff.

CHANDLER, C. J., and BOYLES, NORTH, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.