JENSON v. ASSOCIATED TRUCK LINES.

WORKMEN'S COMPENSATION—EYE INJURY—LOSS OF VISION—CLAIM FOR COMPENSATION.

    Claim for compensation for loss of vision, was timely filed on June 6, 1945, where injury to eye occurred on March 4, 1944, and although plaintiff was treated by defendant's physician for some months was not then advised that loss of vision was permanent, and did not know of such loss until April 25, 1945, since the permanency of the loss of vision was not shown to have been known within six months of the injury and claim was filed within three months of time permanency was known (2 Comp. Laws 1929, § 8431, as amended by Act No. 245, Pub. Acts 1943).

Appeal from Department of Labor and Industry. Submitted October 9, 1946. (Docket No. 37, Calendar No. 43,440.) Decided December 2, 1946.

Harlan Jenson presented his claim for compensation for loss of an eye against Associated Truck Lines, employer, and Hartford Accident & Indemnity

Company, insurer. Award to plaintiff. Defendant appeals. Affirmed.

*Kelley & Seelye,* for plaintiff.

*Mitts & Smith,* for defendant.

Reid, J.. Defendants upon leave granted took an appeal in the nature of certiorari from an award by the department of labor and industry granting plaintiff compensation of $21 per week for 150 weeks for the specific loss of industrial vision in plaintiff's left eye from April 25, 1945. Defendants raise the single question that the plaintiff as a matter of law did not make timely claim for compensation as required by part 2, § 15 of the workmen's compensation act, 2 Comp. Laws 1929, § 8431, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8431, Stat. Ann. 1946 Cum. Supp. § 17.165).

Plaintiff was employed as a truck driver by Harry Johnson, who was broker for the defendant Associated Truck Lines. His work consisted of hauling brass rods from a factory in Belding to a foundry in Detroit, and returning to Belding with brass borings. On March 4, 1944, at about 10:30 a.m., plaintiff and a fellow employee were picking up burlap bags containing brass borings from the ground to put on the truck, and a piece of brass was blown into plaintiff's left eye. He immediately removed the particle with his fingers but the eye continued to smart and water. When he arrived home, he reported the injury to his superior, Harry Johnson, who sent plaintiff to Dr. William Bird at Greenville. Dr. Bird treated plaintiff's eye with drops and plaintiff went back to him for treatment two or three times. Plaintiff's eye was getting worse all the time but plaintiff was away from his work less than

a week.   Dr. Bird recommended that plaintiff see a physician in Grand Rapids.

On April 11, 1944, plaintiff went to Grand Rapids, and was advised by Mr. Holtz, safety director of Associated Truck Lines, to consult Dr. Gilbert, a Grand Rapids eye specialist.   On the same day plaintiff was examined by Dr. Gilbert, who gave him a prescription for eye drops.  Plaintiff returned to Dr. Gilbert at Grand Rapids five or six times over a period of several months.   Although plaintiff could not see out of the left eye when he went to Dr. Gilbert on April 11, 1944, he was assured by Dr. Gilbert that it was just a matter of time until the vision would come back; Dr. Gilbert never told plaintiff he was going to lose his sight and his advice during all the time plaintiff visited him was that it was just a matter of time until the sight would get better.

About a month and a half after the accident plaintiff was given work driving around the city of Ionia, where he remained until the latter part of September, 1944.   During this period he could not stand to be in the sunlight and could not endure bright lights of any kind and was required to wear dark glasses all the time.   He had a prescription given him by Dr. Gilbert filled as late as September 11, 1944. Plaintiff continued to use Dr. Gilbert's prescription for months on Dr. Gilbert's advice and continued to use it after he had moved to Lansing and until some time in November, 1944.   In September, 1944, plaintiff was transferred to Lansing, where he was employed as night dispatcher for the defendant, in which employment he continued to work until some time in February, 1945.

In April, 1945, plaintiff went to Dr. Wilson in Lansing because he had a piece of dirt in his other (right) eye.   The doctor noticed the left eye and

after examining it, informed plaintiff that he had permanently lost the sight of the left eye.. Following his call on Dr. Wilson, plaintiff consulted an attorney and then made another trip to Grand Rapids on April 25, 1945, at defendants' request, to have a further examination by Dr. Gilbert, the arrangement for the trip being made by Mr. Carr, the agent of the defendant Hartford Accident & Indemnity Company. Dr. Wilson testified that plaintiff had a cornea keratitis with a large scar at the base of the pupil and with a cataract lens, which comes from inflammation. Plaintiff testified that he did not know until he consulted Dr. Wilson in April, 1945, that he had lost the sight of the left eye permanently. See *Henderson* v. *Consumers Power Co.,* 301 Mich. 564.

The statute requires the claim for compensation to be made within six months after the occurrence of the injury, but also contains the following proviso, part 2, § 15:

"Provided, however, that in all cases in which the employer has been given notice of the injury, or has notice or knowledge of the same within three months after the happening thereof, but the actual injury, disability or incapacity does not develop or make itself apparent within six months after the happening of the injury, but does develop and make itself apparent at some date subsequent to six months after the happening of the same, claim for compensation may be made within three months after the actual injury, disability or incapacity develops or makes itself apparent to the injured employee, but no such claim shall be valid or effectual for any purpose unless made within two years from the date the personal injury was sustained."

Defendants cite and rely upon *Quick* v. *Dow Chemical Co.,* 293 Mich. 215, in which we say at p. 218:

"The question is, if an injured workman *finds himself totally disabled* any time within six months after an accident, whether or not he must make his claim for compensation orally or written within such six months?  *   *   *   While plaintiff Quick's X-ray picture was not taken until after the expiration of six months following the accident, his testimony shows that the disability had developed and *made itself apparent* prior to the expiration of six months." (italics supplied)

In that case the plaintiff Quick knew of his total disablement within the six months.

In the instant case, decision depends on the fixing of the time when the permanent loss of industrial vision in the left eye became apparent to plaintiff. The record indicates that the inability of nature to heal the eye and restore its vision was not determinable within the six months period. The instant case falls within the quoted proviso.

The permanency of loss of vision in the left eye is not shown to have existed and in any event had not made itself apparent within six months after the happening of the injury, to the knowledge and observation of the attending doctors, nor of the plaintiff, nor so far as this record discloses, of any other person. To rule with defendants would be equivalent to saying that plaintiff should have filed a claim for permanent loss of vision of his left eye at a time when he himself did not believe he had suffered such loss and when the doctor whom defendants recommended that he consult was advising plaintiff that he had not suffered such loss.

The department found, "That permanent loss of vision was first known to the plaintiff on or about April 25, 1945 when it was discovered by Dr. Wilson," and further found that plaintiff's claim for compensation was timely filed on June 6, 1945.

There is testimony in the record to support such award and it is affirmed. Costs to plaintiff.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, NORTH, and DETHMERS, JJ., concurred.