## BETHLEHEM STEEL COMPANY *v.* RUFF

[No. 41, October Term, 1953.]

388

*Decided December 10, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Jesse Slingluff, Jr.,* with whom were *Frank T. Gray* and *Piper & Marbury* on the brief, for the appellant.

*Howard E. Friedman* and *W. Wallace Rhynhart,* with whom was *Amos I. Meyers* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The appeal in this case requires a determination of the operation and effect of the waiver and apportionment provisions of the Workmen's Compensation Law. As a result of an injury suffered on September 18, 1950 by Matthew Ruff, the appellee, while working for Bethlehem Steel Company, the appellant, the State Industrial Accident Commission awarded compensation for permanent partial disability of the back, based on a loss of use of twenty per cent, of which fifteen per cent was due to preexisting disease or infirmity and five per cent due to the accident. On appeal to the Court of Common Pleas of Baltimore City, the jury made the same finding as had the Commission, thereby confirming the award of $375.00.

Ruff has been employed by Bethlehem for many years. He has suffered a succession of industrial accidents, three of which are of pertinence and significance here. On January 3, 1948, he sustained an injury to his back, which the doctor of his selection, Dr. Ullrich, estimated

to have caused a ten per cent permanent disability. His claim was settled by Bethlehem for $950.00. On December 7, 1948 Ruff suffered another accidental injury while at work. The Commission referred him to Dr. Ullrich, who found that the second injury had produced an additional ten per cent permanent disability, making twenty per cent in all. Bethlehem settled again, this time in the amount of $850.00. Ruff returned to work and says, in his testimony, that his back had stopped bothering him before he settled, that he continued to do his usual heavy work as a car dresser (in which he had to handle three or four hundred pound boxes in railroad cars and open and shut the doors of the loaded cars) and was working regularly every day until December 18, 1950, when a metal hook he was using to pull shut a box car door snapped in two and "throwed me up against the truck wheel and that sprained my back". He was totally disabled for several weeks and was paid compensation for that disability. Bethlehem, however, would not pay Matthew for claimed permanent partial disability, saying to him in effect what, in the words of another Matthew (Chapter 20), the householder said to his labourer in the vineyard: "Friend, I do thee no wrong; didst not thou agree with me for a penny?" This agreement was in the form of a waiver, which Bethlehem had required him to execute as part of the $850.00 settlement. The waiver, dated July 13, 1949, says in part:

"As of the above date I have the following disability which is described as follows: Disability to back as per report of Dr. Henry F. Ullrich attached hereto amounting to 20% of loss of use of back; . . .

"I understand that if at any time in the future I should sustain an accidental injury or incur an occupational disease arising out of or in the course of my employment with Bethlehem Steel Company and said accidental injury or occupational disease is caused by my existing disability or disease or infirmity as above set forth, or if said accidental injury or said occupational

disease should increase, aggravate, accelerate or add to my existing disability, disease or infirmity, as specifically set out above, I shall only be entitled to compensation, medical, hospital and/or surgical expense for the disability or occupational disease, if any, which may result solely from such future accidental injury or occupational disease if I should sustain such an injury or incur such a disease.

"I understand that this waiver has been drawn in accordance with the provisions of the Maryland Workmen's Compensation Act, and I intend to and hereby do waive any and all benefits under said Act which may be waived or given up under the provisions of Section 35 (1), 35 (4), and Section 52, and any other similar provisions of the Workmen's Compensation Act which may now or hereafter be enacted."

The appellant's contentions are, first, that the evidence shows as a matter of law that the disability referred to in the waiver was the natural and proximate cause of the disability for which claim is now made, so that the waiver, under Section 52 of Article 101 of the Annotated Code of Maryland, 1951 Edition, is an absolute bar to recovery, and second, that the present disability must exceed twenty per cent if any of it is to be attributed to the last accident, because of Ruff's July 13, 1949 stipulation that he then had twenty per cent disability.

Motions were made to instruct the jury on each contention and for judgment on each ground. The court, refusing to instruct as requested, and denying the motions for judgment, submitted the case on three issues: 1, was there a loss of industrial use of the body; 2, if there was such a present disability, is any part due to a pre-existing disease or infirmity; and 3, if so, what proportion of that disability is due solely to the accidental injury? We think the court was not required to go further and that its charge was without prejudical error.

The Workmen's Compensation Law was first enacted in Maryland in 1914. Section 52 of Chapter 800 of the Acts of that year provided: "No employer or employee who are subject to the provisions of this Act shall exempt himself from the burden or waive the benefits of this Act by any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be *pro tanto* void." No waiver of any kind was permitted until 1931. In that year, as a result of the work of a Committee appointed by Governor Ritchie to revise the compensation laws, apportionment and waiver provisions were enacted, probably inspired by the decisions of this Court in *Dickson Construction & Repair Co. v. Beasley*, 146 Md. 568 and *Congoleum Nairn, Inc. v. Brown*, 158 Md. 285. See *Bata Shoe Co. v. Chvojan*, 188 Md. 153, 156.

The apportionment provision, now codified as Section 35 (7) of Article 101 of the Annotated Code of Maryland, 1951 Edition, requires that whenever "any disability . . . following an accidental injury" is due partly to such injury and partly to a pre-existing "disease or infirmity", the Commission must determine the proportion of the disability "reasonably attributable to the injury" and the proportion so attributable to the prior condition and award compensation only for that proportion due solely to "the accident".

The waiver provision is now codified in sub-paragraph 1 (b) of the same Section as the apportionment provisions. Under it any employee who has suffered the loss or loss of use of a "hand, arm, foot, leg or eye" may waive, in writing, the right to compensation in case of a subsequent accidental injury except "the compensation for the disability resulting solely from such additional accidental injury".

In 1941 Section 52 of Article 101 was first amended to add, after the original 1914 language quoted above, the following: "except that an employee who has previously sustained any injury or partial disability may, by a written contract freely and voluntarily en-

tered into by him and executed in the presence of two subscribing witnesses, waive the benefit of this Article as to any subsequent injury naturally and proximately caused by such previous injury or disability."

The medical testimony is unanimous that Ruff's back was defective by reason of hypertrophic arthritis and a congenital abnormal joint structure. The appellant contends that the disability now claimed is caused by these. defects or by the previous accidents or both, so that the waiver,. as permitted by Section 52, is a complete bar to any compensation. In other words, the appellant says that Section 52 operates because the present *disability* was naturally and proximately caused by the prior disability. Section 52 does not say in its very words what the appellant claims it means and we think it was neither intended to, nor does, so mean. Under Section 52 the waiver permitted is as to "the benefit of this Article as to any subsequent *injury* naturally and proximately caused by such previous injury or disability." The statute is specific in referring to the previous injury or *disability* but refers only to the subsequent *injury*. The Legislature must be presumed to have been deliberate in the distinction. The term injury has been used to convey, and interpreted to have, different meanings in various contexts in the compensation Article. An employee may suffer an industrial accident which definitely injuries him but so slightly that he incurs no expense, loses no time and has no after effects. There the injury and the accident would be as one and neither would be the forerunner of disability. There are four compensable disabilities. Such incapacity may be total or partial, and in either case, temporary or permanent. An accidental injury may cause any one of the four disabilities instantly or, on the other hand, the effects of the injury may not come about or appear until after an interval of time. If the injury and the disability are as one in point of time, there is then a compensable injury which "for all practical effects, is the same. as disability".

*Griffin v. Rustless Iron and Steel Co.*, 187 Md. 524, 532; and *Baltimore Steel Co. v. Burch,* 187 Md. 209. Yet the injury and the disability may be separate, both practically and in the contemplation of the law. Article 101 of the Code evidences in many places the recognition that injury and disability are not necessarily or always synonymous and that injury and accident may be and often are used synonymously, with disability following after.

For example, as we have seen, the apportionment section refers to "disability . . . following an accidental injury" and then requires the Commission to determine the proportion of the disability "reasonably attributable to the injury", and provides that compensation is payable only for that proportion of the disability "which is reasonably attributable solely to the accident". Clearly here the word injury and the word accident are used as meaning the same event or occurrence. Section 35 (1) (b) of Article 101 speaks of "the disability" resulting solely from "additional accidental injury". See also *Jackson v. Ferree,* 173 Md. 400, 403; and *Pillsbury, et al. v. United Engineering Company, et al.,* 342 U. S. 197, 96 L. Ed. 225. We think that the subsequent injury which is spoken of in Section 52 must be considered as the equivalent of the accidental occurrence which is the starting point for whatever physical results flow therefrom.

Section 52 limits the injuries which may be removed from the operation of the compensation Article to those which are "naturally and proximately" caused by a pre-existing injury or disability. We think that this means that the injury must be directly and solely caused by the previous condition. In *Baber v. Knipp & Sons,* 164 Md. 55, decided in 1933, the Court was deciding whether an accidental injury was the proximate cause of death. It held that proximate cause did not require that the result must be "the natural, usual or expected one" and said: "It would seem to be established in this state, in workmen's compensation cases, that 'proxi-

mate cause' means that the result could have been caused by the accident, and that there has not intervened, between the accident and the result, any other efficient cause." In view of this meaning of "proximate" in the Compensation Act, it must be presumed that the Legislature, in using the word, with the addition of "naturally", which made the requirement more stringent than if proximately alone had been used, intended that a pre-existing condition must be the direct and sole cause of the subsequent injury.

The meaning which we attribute to Section 52 makes it supplement the protection given an employer by the other waiver provision and the apportionment section and so facilitates the employment of injured or handicapped persons. In *Paul v. Glidden Co.*, 184 Md. 114, the claimant had lost the first and second fingers of his left hand. Later, while working for the Glidden Co., he had an accident to the third and fourth fingers of the same hand and suffered permanent partial disability. No waiver had been obtained. The court held that the claimant was entitled to compensation for the loss of use of his hand as it stood after the second accident and rejected a claim that the apportionment provision applied and must be called into play. Judge Marbury, for the Court, referred to the special waiver provisions allowed only when the hand, arm, foot, leg or eye is injured. He pointed out that this right of waiver did not apply in other cases and referred to the fact that the handicap, in cases in which this special waiver was permitted, would be readily apparent, while this might not be true in cases of other infirmities, and then said: "It is reasonable to suppose that the Legislature intended to give an employer an opportunity to protect himself in those cases where the disability was apparent. If he did not, then he would have to pay compensation without respect to pre-existing loss or loss of use. In other cases, where disability due to pre-existing disease or infirmity is not

apparent, the employer is protected by the apportioning clause." See also *Bata Shoe Co. v. Chvojan, supra.*

Thus, the pattern of the compensation law becomes plain. If a prospective employee is handicapped, regardless of whether the handicap is because of a named member, or because of infirmity in some other part of the body, the employer can take a waiver under Section 52. If that employee then suffers an accidental injury which is caused solely and directly by his handicap, all benefits of the compensation Article are lost to him, and the employer has not been penalized by employing a partial cripple, no matter what results ensue. If no Section 52 waiver has been taken, or if it is inoperative because the accidental injury was not due directly and solely to the pre-existing condition, the employer is protected by the two sections of the statute construed in *Paul v. Glidden Co., supra.* If the handicap was in any of the five named members, the employer may take the waiver provided for that situation and be responsible in case of later accidental injury only for disability resulting solely from that occurrence. If the handicap is from a disease or infirmity in some other part of the body, the apportionment provision applies, and the employer is responsible only for the disability resulting solely from the accident.

Thus, for example if Ruff, in the present case, had been "throwed against the wheel" because his infirm and ailing back gave way and there had been no other cause which brought about that result, the waiver would be fully effective under Section 52 and he would not be entitled to compensation for the disability which followed that accidental injury. However, the sole and direct cause of the accident bore no relation to the infirmities of his back. The snapping of the metal hook which he was using to shut the car door could have occurred as readily to a man with no back injury whatever. Further, the result of the snapping of the hook, namely, the sudden and forcible contact of Ruff's back with the truck wheel, would have produced in-

jury in a normal man, although some of the doctors also said that the results would not have been as severe, or permanent.

Since the accidental injury which Ruff suffered was not due solely and directly to his pre-existing disease or infirmity, Section 52 does not apply, and the waiver of July 13, 1949 does not cover the situation which did occur. The stipulation by Ruff in the waiver that he then had twenty per cent disability of his back is not binding upon him where, as in this case, the compensation Article applies to the accidental injury which he suffered. Since Section 52 does not operate to bar the application of Article 101, all of the applicable provisions thereof must be considered as if the waiver had not been executed. The five named members are not involved, so the apportionment provision prevails and must be used as a measure of compensation payable for the disability resulting from the last accident. *Paul v. Glidden Co., supra, Bata Shoe Co. v. Chvojan, supra.* The apportionment provision does not contemplate nor indeed does the Act generally permit a waiver of any rights which are given under it. *Albert F. Goetze, Inc. v. Pistorio,* 201 Md. 152, 156, 92 A. 2d 762, 764. The Commission, and on appeal, the court and jury, are required to make the apportionment called for in that section, and the employee may not bindingly agree to a previous percentage of disability. The most that can be said for the waiver of July 13, 1949 in this respect is that it could be considered as evidence by the triers of the facts along with other pertinent evidence.

It is to be noted that there was ample evidence that would have permitted a finding that Ruff did not actually have the disability stipulated in the waiver at the time he suffered the injury of December 18, 1950. He had then been working for a year and a half, doing heavy work daily, and having no trouble with his back.

No elaborate discussion is needed to show that with the waiver out of the case, as we have found that

it is, the evidence was ample to sustain the finding of the jury. The fact that Ruff had hypertrophic arthritis and a congenital abornmal joint defect, which made his back more susceptible to impairment than a normal back, does not bar him from the right to compensation for a disability proximately caused by an accidental injury which has accelerated or aggravated the existing disease or infirmity. *Cabell Concrete Block Co. v. Yarborough,* 192 Md. 360, 366, and cases there cited. Dr. Levin testified that Ruff had a 30% back disability. Dr. Ullrich said that there was a 20% disability of the back, none of which was attributable to the last accident. Dr. Bociek, who is employed by the appellant, had examined Ruff on numerous occasions and had taken X-rays of his back from time to time, testified that he found no back disability on any examination prior to December 18, 1950, but after the accident on that day, he found a 10%—15% permanent partial disability, apparently as a result of an observed limitation of leg motion. He testified that he did not attribute this disability to the last accident but we think that the Commission had the right, as it seemingly did, to find significant the fact that it was only after the last accident that Dr. Bociek did find disability, being as well acquainted with the claimant as he was. The jury, too, could properly find this as evidence that Ruff's existing condition was aggravated by the last accident to a point which produced additional disability. Dr. Blake, on behalf of the Commission, found a permanent partial disability from 20% to 25%, which even on Dr. Ullrich's testimony, would have been 5% over the disability which Dr. Ullrich claimed already existed as a result of the two previous accidents.

We see no error in the record which affected the result.

*Judgment affirmed, with costs.*