HENRY M. BLANDING *v.* J. H. ANDREWS AND SONS ET AL.

[No. 413, September Term, 1976.]

*Decided May 12, 1977.*

The cause was argued before GILBERT, C. J., and POWERS and MASON, JJ.

*Alan G. Horwitz* for appellant.

*Theodore B. Cornblatt*, with whom were *Alfred M. Porth* and *Smith, Somerville & Case* on the brief, for appellees.

Powers, J., delivered the opinion of the Court.

In this case we consider the several apportionment and waiver provisions found in the Workmen's Compensation Law.

Henry M. Blanding, the appellant here, was employed in September 1969 by Bethlehem Steel Corporation. On 21 November 1969 he sustained an injury to his right eye. His compensation claim, supported by proof of a disability rated as loss of 36% of the vision of his right eye, was disputed, but was settled.

On 24 December 1971, while Blanding was employed by J. H. Andrews & Sons, appellee here, he was involved in a fight with a fellow employee at a Christmas party. Blanding's right eye was injured, and a few days later it was surgically removed.[1] He filed a compensation claim, under which the Workmen's Compensation Commission ultimately entered an order, on 15 July 1975, which included a finding

" * * * that the claimant sustained a permanent partial disability resulting in 100% loss of vision in his right eye, 64% of such disability is reasonably attributable to the aforesaid accidental injury, and 36% thereof is due to a pre-existing condition."

The Commission ordered the payment of compensation accordingly. Blanding appealed. The Superior Court of Baltimore City affirmed. Blanding appealed to this Court.

Appellant's contention, which we restate for him, is that he is entitled to the full scheduled amount of compensation for the loss of an eye,[2] because apportionment does not apply when the second injury would have resulted in 100% loss of

---

1. It is not questioned in this appeal that the disability resulted from an injury sustained in the course of and arising out of Blanding's employment.

2. And, as well, the additional compensation for a "serious disability" provided by Code, Art. 101, § 36 (4a).

vision of the eye, irrespective of the first injury. He not only points out that his ultimate permanent disability would have been the same, even without the preexisting infirmity, but he suggests that there could be no apportionment unless the previous infirmity *caused* the second injury, or caused its result to be greater.

We shall refer to the three apportionment provisions in the compensation law, to show what their application to this case may be, and to the two waiver provisions, to show that no waiver, as a precondition to apportionment, was required in this case.

Code, Art. 101, § 36 (7) says, in part:

> "Whenever it shall appear that any permanent disability from which an employee is suffering following an accidental injury, is due in part to such injury, and in part to a preexisting disease or infirmity, the Commission shall determine the proportion of such disability which is reasonably attributable to the injury and the proportion thereof which is reasonably attributable to the preexisting disease or infirmity, and such employee shall be entitled to compensation for that proportion of his disability which is reasonably attributable solely to the accident and shall not be entitled to compensation for that proportion of his disability which is reasonably attributable to the preexisting disease or infirmity."

Another apportionment provision, clearly not applicable here, is found in Art. 101, § 66 (1). It is of limited application, and is concerned with apportionment only as between the claimant's employer and the Subsequent Injury Fund of the total compensation allowable for death or a presently existing disability of greater than 50% of the body as a whole. It is not concerned, as is § 36 (7), with apportionment of a presently existing disability between that part which is compensable and that part which is not compensable. For a recent application of § 66 (1) see *Anchor Motor Freight v. Subsequent Injury Fund*, 278 Md. 320, 363

A. 2d 505 (1976), *aff'g Subsequent Injury Fund v. Compton,* 28 Md. App. 526, 346 A. 2d 475 (1975).

The other apportionment provision appears in the law coupled with authorization for a waiver by the employee as to preexisting permanent partial disabilities of the extremities or the eyes. As we shall show later, a number of cases decided under this subsection before 1969 held that when there was no waiver, there was no apportionment, and the entire disability was then compensable. The second paragraph of the subsection, quoted below, was added by Acts of 1969, ch. 721. It requires the Commission to apportion, in the absence of a waiver as well as when there was a waiver. The provision is in Art. 101, § 36 (1) (b). It says:

> "Whenever any person who has suffered the loss, or loss of use of a hand, arm, foot, leg or eye, shall enter into a contract of employment, it shall be permissible for the employee to waive in writing, either in the contract of employment, or by a separate written instrument, any right to compensation to which he would be entitled because of the preexisting permanent partial disability, in the event of subsequent accidental injury, and in cases the employee so suffering an additional accidental injury, shall be entitled to the compensation for the disability resulting solely from such additional accidental injury. No such waiver shall be effective unless the preexisting permanent partial disability shall be plainly described therein, nor unless the same be executed by the employee with knowledge of its contents prior to the time of the accident upon which the claim is based.

> "In the absence of any waiver of preexisting permanent partial disability, the Commission in determining any case involving a subsequent accidental injury shall apportion and make award

only for the permanent disability caused by the subsequent accidental injury."

A much broader kind of waiver, not applicable in the present case, is permitted by Art. 101, § 51, which generally prohibits avoidance of the compensation law, but says, in part:

" * * * except that an employee who has previously sustained any injury or a partial disability may, by a written contract freely and voluntarily entered into by him and executed in the presence of two subscribing witnesses, waive the benefit of this article as to any subsequent injury naturally and proximately caused by such previous injury or disability."

A relationship of proximate cause between the preexisting disability and the current accidental injury would be very material if the defense of Blanding's employer were based upon a § 51 waiver. There was, of course, no such waiver or defense in/ this case. Except for a § 51 waiver, causal relationship has little significance in compensation law. So long as the disability results from an accidental personal injury arising out of and in the course of employment, and not from the employee's wilful intention to cause injury, or solely from his intoxication or use of drugs, it makes no difference whether the injury was proximately caused by negligence or fault of the employee, of a fellow employee, of the employer, or of a stranger, or by no negligence or fault at all.

In construing a § 51 (then § 52) waiver as applying only to a proximately caused subsequent injury, the Court of Appeals, speaking through Judge Hammond in *Bethlehem Steel Co. v. Ruff*, 203 Md. 387, 101 A. 2d 218 (1953), said, at 396-97:

"The meaning which we attribute to Section 52 [now § 51] makes it supplement the protection given an employer by the other waiver provision

and the apportionment section and so facilitates the employment of injured or handicapped persons.

* * *

"Thus, the pattern of the compensation law becomes plain. If a prospective employee is handicapped, regardless of whether the handicap is because of a named member, or because of infirmity in some other part of the body, the employer can take a waiver under Section 52. If that employee then suffers an accidental injury which is caused solely and directly by his handicap, all benefits of the compensation Article are lost to him, and the employer has not been penalized by employing a partial cripple, no matter what results ensue. If no Section 52 waiver has been taken, or if it is inoperative because the accidental injury was not due directly and solely to the pre-existing condition, the employer is protected by the two sections of the statute construed in *Paul v. Glidden Co.*, [184 Md. 114, 39 A. 2d 544 (1944)]. If the handicap was in any of the five named members, the employer may take the waiver provided for that situation and be responsible in case of later accidental injury only *for disability resulting solely from that occurrence.* If the handicap is from a disease or infirmity in some other part of the body, the apportionment provision applies, and the employer is responsible only *for the disability resulting solely from the accident.*"

In arguing that the total loss of the right eye should not be apportioned, under § 36 (7), because the current injury was not due in part to the preexisting infirmity, appellant misunderstands the words used in the statute. It is not the relationship of the current "injury" to the preexisting infirmity which is a prerequisite to apportionment — it is the relationship of the ultimate permanent "disability", following the current injury, to the preexisting infirmity.

We may find in the cases that "injury" and "disability" appear to be used interchangeably, and in a particular situation the distinction may have no significance. As the Court of Appeals said in *Bethlehem Steel Co. v. Ruff, supra,* at 394:

> "The term injury has been used to convey, and interpreted to have, different meanings in various contexts in the compensation Article. An employee may suffer an industrial accident which definitely injures him but so slightly that he incurs no expense, loses no time and has no after effects. There the injury and the accident would be as one and neither would be the forerunner of disability."

and said further, at 395:

> "Yet the injury and the disability may be separate, both practically and in the contemplation of the law. Article 101 of the Code evidences in many places the recognition that injury and disability are not necessarily or always synonymous and that injury and accident may be and often are used synonymously, with disability following after."

We must keep the distinction in mind, however, for compensation is not paid for an "injury", but for "disability". Code, Art. 101, § 15, says, in part:

> "Every employer subject to the provisions of this article, shall pay or provide as required herein compensation according to the schedules of this article for the *disability* or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury * * *." (Emphasis added).

The "disability" upon which the law first focuses is the ultimate disability which an employee has after the effects of a current accidental injury are felt. At this step, the disability must be related, at least in part, to that injury.

The next focus is upon whether the employee had a preexisting disease or infirmity, and, if he did, whether the ultimate, or cumulative, disability is also related to that preexisting infirmity. Whether the current "injury" was or was not related to that infirmity is of no significance.

The current injury clearly caused the loss by the appellant of the remaining 64% vision of his right eye. The preexisting partial loss of 36% of that vision was related to the ultimate disability because the two combined to make the loss of the sight of his right eye total. The statute required the Commission to determine the proportions of the disability reasonably attributable to the current injury and the preexisting infirmity.

Although there may be apparent logic to the argument that injury to an eye, serious enough to require its removal, would have resulted in the total loss of even a perfect eye, it is no more persuasive than would be an argument by the owner of a four year old automobile, worth $1,500 and totally destroyed, that if the automobile had been new, his loss would have been $5,000.

The appellant relies principally upon two decisions of the Court of Appeals. They are *Kraushar v. Construction Corp.,* 180 Md. 486, 25 A. 2d 439 (1942), and *Cabell Concrete Block Co. v. Yarborough,* 192 Md. 360, 64 A. 2d 292 (1949). *Kraushar* is one of four cases which we prefer to consider together, largely because they tend to show more clearly what the present case is not.

In 1930 the Court of Appeals decided *Congoleum Nairn v. Brown,* 158 Md. 285, 148 A. 220 (1930). Having become partially disabled by the loss of two fingers of his left hand in 1924, Brown sustained an injury in 1928, in which he lost two fingers and part of a third on his right hand. Almost parenthetically the Court noted that many years before, Brown had lost the lower part of one leg, below the knee, and wore an artificial portion of leg in its place. The Commission had found that Brown suffered only partial disability, based on the current injury, as scheduled in the statute. On appeal, it had been determined by a jury in the lower court that Brown was then totally disabled. The employer appealed.

The Court, noting that, "The act does not contain any provisions explicitly settling the question now considered", ruled, at 291:

> "After weighing the arguments on both sides, this court adopts the construction that the consequences to the particular workman determine the degree of disability, so that if an injury deprives him of all the capacity he has left after a previous accident, that result might be classed as total disability from the injury."

There was, at that time, no authorization for apportionment or for waiver in the law. Statutory provision for apportionment, now § 36 (7), and for waiver, now § 36 (1) (b), promptly followed that decision.[3] As the Court of Appeals said in *Bata Shoe Co. v. Chvojan*, 188 Md. 153, 52 A. 2d 105 (1947), at 156-57:

> "Both of these provisions were first introduced into the Compensation Law in 1931 (ch. 363, Acts of 1931). It was conceded in argument that they were probably inspired by the decisions of this Court in *Dickson Construction & Repair Co. v. Beasley*, 146 Md. 568, 126 A. 907, and *Congoleum Nairn, Inc. v. Brown*, 158 Md. 285, 148 A. 220, 67 A. L. R. 780. In the Beasley case, it was held that recovery could be had for a disease or infection set in motion or aggravated by injury, while in the Brown case it was held that if an injury deprived a claimant of all the capacity he had left after a previous injury, the result should be classed as total disability from the injury."

*Kraushar v. Construction Corp., supra*, although not decided until 1942, was the first case to bring before the Court of Appeals the 1931 enactments dealing with apportionment and waiver. It was soon followed by *Paul v. Glidden Co.*, 184 Md. 114, 39 A. 2d 544 (1944), and in 1947 by

---

3. The § 51 waiver, resting on proximate cause, was first enacted in 1941.

*Bata Shoe, supra,* in which the Court observed that its decision was controlled by *Paul v. Glidden Co., supra,* which in turn was foreshadowed by *Kraushar, supra.*

In *Kraushar* the claimant sustained an injury which required the removal of his right eye, in which, prior to the injury, he had only 5% vision. The Court noted the apportionment and the waiver provisions of the statute, and, stating that there had been no waiver, held that the injured workman was entitled to compensation for the full extent of his ultimate disability, disregarding the preexisting disability or infirmity.

In *Paul v. Glidden Co., supra,* the employee had previously lost two fingers of his left hand, and had a 40% partial loss of use of the hand. The second injury was to the two remaining fingers, and it was determined that he then had a permanent partial loss of use of the left hand expressed as 45%. The Commission awarded compensation based on the 45% disability of the hand. The lower court reduced the award, giving effect to the preexisting disability. The Court of Appeals reversed the lower court, and reinstated the award of the Commission. The Court discussed both the apportionment and the waiver provisions of the law. It said, at 119-20:

> "The waiver provision of Section 48 [now § 36 (1) (b)] applies only to five members of the body: the hand, the arm, the foot, the leg, and the eye. The loss or loss of use of one of these members can be readily detected by a prospective employer, and to protect himself, he can seek a waiver before accepting the employee. This right does not apply to other disabilities which may be due to prior accidents or infirmities. It is reasonable to suppose that the Legislature intended to give an employer an opportunity to protect himself in those cases where the disability was apparent. If he did not, then he would have to pay compensation without respect to pre-existing loss or loss of use. In other cases, where disability due to pre-existing disease or infirmity is not apparent, the employer is

protected by the apportioning clause. When the Legislature said that if the waiver was made 'the employee so suffering an additional accidental injury shall be entitled to the compensation for the disability resulting solely from such additional accidental injury', [i]t would seem a necessary corollary that if the waiver were not obtained, the employee would be entitled to compensation for his entire disability. There seems to us no difficulty in construing the two sections together in this way. It seems difficult to believe that such a calculation as that made by the Court below was within the contemplation of the members of the General Assembly when the Act was passed. We cannot find that it was, in the absence of a definite direction to that effect.

"Under the circumstances in this case, no waiver having been obtained, the appellant was entitled to be compensated for the loss of use of his hand as it stood after the second accident, which was 45 per cent."

Both the apportionment and the waiver sections of the law were considered by the Court in *Bata Shoe, supra.* In that case, the employee lost the fingers of his right hand in 1939, and was compensated for loss of use of the hand. After a 1945 injury his disability was 100% loss of use of the right arm. By stipulation 75% was attributable to the current injury and 25% to the preexisting loss of use of the hand. No waiver had been taken by the employer as to the preexisting disability. The Court declined to apply apportionment. Relying on *Paul v. Glidden Co., supra,* and quoting from *Congoleum Nairn v. Brown, supra,* the Court said, at 159:

"By a parity of reasoning, we hold that where a second injury results in a total loss of use of an arm, the fact that its use was previously impaired need not be taken into account, even though compensation has been paid for the prior injury."

The two apportionment statutes enacted in 1931, after the decision in *Congoleum Nairn v. Brown, supra,* dealt with two different kinds of preexisting condition. Apportionment under § 36 (1) (b) is available to an employer when the employee had a preexisting permanent partial disability, consisting of the loss or loss of use of a hand, arm, foot, leg, or eye. Before 1969 this apportionment was available only if the employee had executed the waiver authorized in the subsection. The waiver is no longer required, and was not required at the time of Blanding's current injury.

Apportionment under § 36 (7) is available whenever it is shown that the present permanent disability is due in part to a preexisting disease or infirmity. This subsection has never included a waiver requirement, and the cases have held that it is not necessary that the preexisting infirmity had previously resulted in any partial disability.

It is clear to us that in *Kraushar, Paul,* and *Bata Shoe,* all involving hands, arms, or eyes, apportionment under § 36 (1) (b) would have applied if there had been a waiver, and was denied because there was no waiver.

In the case now before us, that same apportionment provision was correctly applied by the Commission, and by the Superior Court of Baltimore City, to the appellant's permanent partial disability, despite the absence of a waiver.

Cases considering apportionment under § 36 (7), for a preexisting infirmity not involving partial disability of the hand, arm, foot, leg, or eye, such as *Cabell Concrete Block Co. v. Yarborough,* 192 Md. 360, 64 A. 2d 292 (1949); *Bethlehem Steel Co. v. Munday,* 212 Md. 214, 129 A. 2d 162 (1957); *Bosley v. Jackson,* 250 Md. 401, 243 A. 2d 513 (1968); and *Symons v. R. D. Grier & Sons,* 10 Md. App. 498, 271 A. 2d 398 (1970), are not apposite to the question involved here.

*Judgment affirmed.*
*Appellant to pay costs.*