749 A.2d 774

Charlotte **MARSHECK**

v.

**BOARD OF TRUSTEES OF the FIRE & POLICE EMPLOYEES' RETIREMENT SYSTEM OF the CITY OF BALTIMORE.**

No. 69, Sept. Term, 1999.

Court of Appeals of Maryland.

April 12, 2000.

394

Henry L. Belsky and Kimberly A. Alley (Schlachman, Belsky & Weiner, P.A., on brief), Baltimore, for petitioner.

William R. Phelan, Jr., Principal Counsel and Avery M. Muller, Asst. City Sol. (Otho M. Thompson, City Sol., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

HARRELL, Judge.

Charlotte Marsheck, Petitioner, applied to the Fire and Police Employees' Retirement System of the City of Balti-

more, Respondent, for special disability benefits under Baltimore City Code (1983 Repl.Vol. & 1995 Supp.), Article 22, § 34(e) for a work-related injury. Pursuant to Baltimore City Code (1983 Repl.Vol. & 1995 Supp.), Article 22, § 33(1), an administrative hearing was held on her application before a hearing examiner, who determined that Petitioner was ineligible for special disability benefits because she failed to file her application timely. Petitioner sought judicial review in the Circuit Court for Baltimore City. The Circuit Court held that the hearing examiner correctly determined that Petitioner's application was untimely. Petitioner then appealed to the Court of Special Appeals which affirmed. We granted Ms. Marsheck's petition for writ of certiorari. *Marshek v. Board of Trustees of the Fire and Police Employees' Retirement System of the City of Baltimore*, 355 Md. 610, 735 A.2d 1105 (1999). She presents us with the following questions, which we rephrase as follows:

I. Did the Court of Special Appeals err, in affirming the Circuit Court's ruling that the hearing examiner properly denied Petitioner's application for special disability, by construing the term "injury", as used in Article 22, § 34(e) of the Baltimore City Code, to begin at the time Petitioner originally sustained her work-related back injury on 13 February 1992?

II. Did the Court of Special Appeals err in failing to apply the "substantial compliance" standard to Petitioner's untimely filing of her special disabilities benefit application?

We affirm the judgments of the Court of Special Appeals and the Circuit Court.

## STATEMENT OF FACTS

The facts of this case are not in dispute. Petitioner began her employment as a Baltimore City police officer on 15 August 1985. On 13 February 1992, she sustained a work-related back injury while on duty. Despite the injury, she continued to serve with the police department, at times as a full duty police officer and at other times, due to the injury, on light duty status. Throughout her service, she underwent

medical treatment and physical therapy. In September 1996, her back problems worsened and she became unable to return to work with the department in any capacity. Until that point, by all indications, Petitioner made every effort to continue her employment with the police department until she could no longer serve physically. Petitioner acknowledged that she did not sustain a subsequent injury to her back following the 13 February 1992 work-related injury.

After a three year period during which Ms. Marsheck endured several surgeries on her back, multiple epidural injections and steroid blocks, and severe depression, her physician opined, on 6 February 1997, that Petitioner was one hundred percent disabled from performing her duties with the police department. On 12 February 1997, Petitioner's then attorney sent, via first-class mail, an application for special disability benefits to Respondent. Respondent replied, by letter dated 19 February 1997, informing Petitioner that her application was received by it on 18 February 1997 and, furthermore, that the application was not notarized as required. The application was returned via first-class mail to Petitioner on 19 February 1997. Petitioner then sent a properly notarized application which was docketed as received by Respondent on 25 February 1997.

On 22 May 1997, at an administrative hearing before the Respondent's examiner, Respondent argued that Petitioner did not file her application within five years of her 13 February 1992 injury, as required by § 34(e) of Article 22 of the City Code.[1] Petitioner contended that the applicable date of

---

1. Section 34(e), which applies to special disability benefits, states:

 Any member who has been determined by the hearing examiner to be totally and permanently incapacitated for the further performance of the duties of his job classification in the employ of Baltimore City, as the result of an injury arising out of and in the course of the actual performance of duty, without willful negligence on his part, shall be retired by the Board of Trustees on a special disability retirement. *For any employee who became a member on or after July 1, 1979, any claim for special disability benefits must be filed within five (5) years of the date of the member's injury.*
 (Emphasis added).

injury under § 34(e) is the date when she became permanently disabled or incapacitated and unable to work and, therefore, the five year statute of limitations did not begin to run until September 1996. The hearing examiner agreed with Respondent and denied Petitioner special disability benefits under § 34(e) and awarded her only ordinary disability benefits pursuant to § 34(c).[2]

Petitioner filed a timely petition for judicial review of the hearing examiner's decision in the Circuit Court for Baltimore City.[3] In an order dated 4 February 1998, the Circuit Court affirmed the hearing examiner's decision. Petitioner then filed an appeal of the Circuit Court's decision to the Court of Special Appeals which affirmed the Circuit Court's judgment.

## I.

Petitioner asks us to equate the term "injury", as it is used in § 34(e), to mean the date a police officer becomes permanently disabled and incapacitated from being able to perform police duties and, thus, forced into retirement. Based on this argument, Petitioner's "injury" would occur sometime in September 1996, the earliest date her health deteriorated to the point that she permanently became unable to perform any police duties. She reasons that Respondent's position that any claim for special disability benefits must be filed within five years of her original injury on 13 February 1992 is illogical. Petitioner explains that an injured employee may

---

**2.** Subject to certain requirements, special disability benefits are awarded generally to fire and police employees permanently disabled as a result of a work related-injury while ordinary disability benefits are awarded for employees permanently disabled regardless of the source of the injury. We compare these differences at length *infra*.

**3.** The hearing examiner's decision is final within thirty days if no appeal is filed. Section (33)1 states in part:

If neither party files an appeal, then upon the expiration of thirty (30) days following the notice of the hearing examiner's written finding of fact, the hearing examiner's determination shall be final and binding, subject to the Panel of Hearing Examiners' right to re-examination as provided for in Section 34(g).

not apply for special disability benefits earlier than the date of permanent disability. This being so, Petitioner reasons, disability may not evolve, in all cases, within five years of the original work-related injury. For example, an injured employee might make every effort, as Petitioner appears to have done here, to continue employment, albeit at a reduced level of activity, rather than pursue special disability benefits as the first course of action. In choosing that praiseworthy path, an employee might pass the five year cut-off date, suffer a subsequent deterioration in medical condition to the point of total disability, and be barred from seeking special disability benefits. This, Petitioner submits, is not a just result under the circumstances. Moreover, Petitioner theorizes that Respondent's position must be contrary to the City Council's intent in drafting the statute because it punishes dedicated employees who endeavor to continue to work. Such a policy, claims Petitioner, encourages an employee to apply frivolously or prematurely for retirement for fear of never being able to collect special disability benefits when his or her health degenerates due to work-related injuries.

In contrast, Respondent argues that the term "injury" refers clearly and unambiguously to the original incident that causes the worker to eventually become permanent disabled, or incapacitated. Respondent states that § 34(e) requires that the application for special disability benefits be filed within five years of the injury, rather than the date of permanent disability or incapacitation that may be traced to the injury. Furthermore, Respondent asserts the public policy legitimacy of the City Council's five year cut-off date because special disability benefits are substantially greater than ordinary disability benefits. This argument begins with the premise that the City Council provides generous benefits to reward City workers injured in the line of duty. Tied with this generosity, however, the City Council exercised its discretion to set a cut-off date for employees hired after 1 July 1979 in order to: 1) protect against frivolous claims; and 2) supply the relatively greater certitude of objectively verifiable dates

and events in lieu of potentially difficult questions of proof and causation that may be presented otherwise.

This Court presumes that the decision made by an administrative body is prima facie correct. *See Baltimore Lutheran High School Ass'n, Inc. v. Employment Sec. Admin.,* 302 Md. 649, 662–63, 490 A.2d 701, 708 (1985). We, therefore, limit our review of a final decision from an administrative agency to determining whether the agency had before it, at the time its decision was rendered, substantial evidence to support its decision and whether the agency's decision is free from prejudicial legal error.[4] *See Baltimore Lutheran,* 302 Md. at 662, 490 A.2d at 708. Because of the deference courts ordinarily accord the expertise of an administrative agency acting within the sphere of its regulated activities, we refrain from making our own independent findings of fact or substituting our judgment for that of the agency when the record contains substantial evidence supporting the agency's determination. *See State Admin. Bd. of Election Laws v. Billhimer,* 314 Md. 46, 58, 548 A.2d 819, 825–26 (1988); *Baltimore Lutheran,* 302 Md. at 662, 490 A.2d at 708.

Petitioner presents us with a solely legal issue, namely to determine the meaning of the term "injury" as used in § 34(e). Our task, therefore, is the ascertainment of whether the legislative body intended the term "injury" in § 34(e) to mean the point at which a police officer becomes permanently disabled.

"Fundamentally, the object of all statutory construction is to determine and effectuate the enactment's purpose." *Briggs v. State,* 289 Md. 23, 31, 421 A.2d 1369, 1374 (1980). Generally, if the language of the statute is unambiguous and

---

4. Section 33(1) limits judicial review as follows:

The final determination of the hearing examiner shall be presumptively correct and shall not be disturbed on review except when arbitrary, illegal, capricious or discriminatory. If either party is aggrieved by a decision of the Baltimore City Court, the aggrieved party may further appeal such decision to the Court of Special Appeals, subject to review by the Maryland Court of Appeals.

its meaning is plain and definite, our inquiry as to the legislature's intent will end and we will not venture outside the words of the statute. *See Martin v. Beverage Capital Corp.,* 353 Md. 388, 399, 726 A.2d 728, 733 (1999); *Kaczorowski v. Mayor of Baltimore,* 309 Md. 505, 513, 525 A.2d 628, 632 (1987). If the statute's language is ambiguous, however, we will look towards other sources, such as relevant case law and legislative history, to aid us in determining the legislature's intentions. *See Martin,* 353 Md. at 399, 726 A.2d at 733; *Kaczorowski,* 309 Md. at 515, 525 A.2d at 632–33. In addition, we bear in mind that our interpretation of the statute and the legislature's intent must be examined by looking to the statutory scheme in its entirety rather than segmenting the statute and analyzing only its individual parts. *See Martin,* 353 Md. at 399, 726 A.2d at 734. By such an analytical approach, we seek to avoid illogical and unreasonable results that defy common sense. *See Kaczorowski,* 309 Md. at 513, 525 A.2d at 632.

■ Remedial legislation, such as governs the retirement system here, must be construed liberally in favor of injured employees in order to effectuate the legislation's remedial purpose. *See Martin,* 353 Md. at 400, 726 A.2d at 734; *Montgomery County v. McDonald,* 317 Md. 466, 472, 564 A.2d 797, 800 (1989). Such a principle, however, does not grant us license to alter the statute beyond its clear meaning and the legislature's intent. *See id.* This Court, therefore, will not add provisions or tailor existing ones to change the mandatory nature of the statute's language in order to favor the disability claimant. *See Philip Elec. North America v. Wright,* 348 Md. 209, 217, 703 A.2d 150, 153 (1997); *McDonald,* 317 Md. at 472–73, 564 A.2d at 800.

■ The general rule of liberally construing remedial statutes is approached with caution when the scrutinized legislative scheme contains a statute of limitations.[5] We have

---

5. The parties briefed and argued the municipal code provision in question as a statute of limitations. No contentions were advanced that

explained, in the context of the workers' compensation law, that:

> "[T]he general purpose of the applicable work[ers'] compensation act to compensate injured workers should not be used to interpret the limitations provision, because the very existence of a limitations provision in the act indicates that the legislature has deliberately compromised the general compensation purpose in the interests of the purposes served by a limitations provision."

*McDonald,* 317 Md. at 472–73, 564 A.2d at 800 (citing Kelley, *Statutes of Limitations in the Era of Compensation Systems: Workmen's Compensation Limitations Provisions for Accidental Injury Claims,* 1974 Wash.U.L.Q. 541, 603). *See also Mayor & City Council of Cumberland v. Beall,* 97 Md.App. 597, 600, 631 A.2d 506, 508 (1993). "Accordingly the Courts should refuse to give statutes of limitations a strained construction to evade their effect." *McMahan v. Dorchester Fertilizer Co.,* 184 Md. 155, 159, 40 A.2d 313, 315–16 (1944).

 Statutes of limitations are also remedial and grounded upon sound public policy. *See McMahan,* 184 Md. at 159, 40 A.2d at 315. In addition to serving important societal benefits, such as judicial economy, they are designed to balance competing interests between potentially adverse parties. *See Doe v. Maskell,* 342 Md. 684, 689, 679 A.2d 1087, 1089 (1996); *Hecht v. Resolution Trust Corp.,* 333 Md. 324, 332–33, 635 A.2d 394, 399 (1994). On the one hand, statutes of limitations provide plaintiffs or claimants with a window of time to initiate a cause of action or assert a claim. *See Maskell,* 342 Md. at 689, 679 A.2d at 1089. As implied from its title, the time period in a statute of limitations is not infinite. Once the limitation period passed, the statute, which once provided opportunity, closes the window and the claim is barred thereafter. The legislature, in drafting such legislation, implicitly recognizes that as time passes, difficult evidentiary issues arise, such as proof of the cause of injury, faded

---

it should be viewed otherwise. For purposes of our analysis, therefore, we assume it to be a statute of limitations.

memories, and the availability of witnesses. *See Hecht,* 333 Md. at 332–33, 635 A.2d at 399; *Burket v. Aldridge,* 241 Md. 423, 428, 216 A.2d 910, 912 (1966). Furthermore, without closure on the filing of such claims, potential defendants are often faced with uncertainty that may affect their future financial viability. *See Newell v. Richards,* 323 Md. 717, 727, 594 A.2d 1152, 1157 (1991) (discussing limitation statutes and their effectiveness in preventing a crisis of stale medical malpractice claims); *DeBusk v. Johns Hopkins Hosp.,* 342 Md. 432, 438–39, 677 A.2d 73, 76 (1996)(noting how both employers and employees benefit from workers' compensation statutes that balance competing interests). By closing the window, the statute of limitations grants repose to potential defendants that would be disadvantaged unfairly by stale claims due to unreasonably long delay. *See Maskell,* 342 Md. at 689, 679 A.2d at 1089; *McMahan,* 184 Md. at 159–60, 40 A.2d at 315–16. The final result is that the "right to be free of stale claims in time comes to prevail over the right to prosecute them." *Burket,* 241 Md. at 428, 216 A.2d at 912 (citations omitted).

We have further noted that there is no magic to the window of time determined by the legislature. *See Maskell,* 342 Md. at 689, 679 A.2d at 1089. "It simply represents the legislature's judgment about the reasonable time needed to institute suit." *Id.* We also recognize that "[t]he statute of limitations, as a defense that does not go to the merits, is disfavored in law and is to be strictly construed." *Newell,* 323 Md. at 728, 594 A.2d at 1157. This makes sense if we remember that "[s]tatutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients rather than principles." *Maskell,* 342 Md. at 690, 679 A.2d at 1089 (citations omitted).

With these concepts in mind, we turn to the statute at issue. Sections 29 through 36 of the Baltimore City Code set forth the provisions of the Fire and Police Employees' Retirement System of the City of Baltimore. The pertinent provisions for determining the scope of the term "injury" are found in §§ 33

and 34. For the most part, § 33(1) delineates the administrative process that an applicant must traverse before becoming eligible for any disability benefits, but it also contains substantive provisions similar to § 34(e). *See Board of Trustees of Fire & Police Employees Retirement System of City of Baltimore v. Kielczewski,* 77 Md.App. 581, 591, 551 A.2d 485, 490 (1989). It states in part:

> Any ordinary disability or special disability claimant must make proper application to the Panel of Hearing Examiners, which application shall include a medical certification of his disability and all supporting medical documentation, on a form prescribed by the Panel of Hearing Examiners, wherein the member shall state he has suffered a disability and that such disability prevents him from further performance of the duties of his job classification in the employ of Baltimore City. *If the claim is for a special disability benefit, he shall in addition, state that such physical incapacity was the result of an injury arising out of and in the course of the actual performance of his duty, without willful negligence on his part. Any member who has joined this system on or after July 1, 1979, and who makes application for special disability benefit must additionally state that the disability resulted from an injury that occurred within five (5) years of the date of his application.*

(Emphasis added). Section 33(1) also states the role of the Respondent's hearing examiner as follows:

> The hearing examiner shall conduct hearings for all members on all matters involving ordinary disability claims, special disability claims, special death benefit claims, and any related matters arising out of said claims.... One hearing examiner from the Panel shall hear a particular claim for benefits. The hearing examiner shall conduct hearings in an informal manner with sufficient latitude to provide a fair and impartial hearing to all of the parties without requiring strict compliance with the rules of evidence. Testimony at the hearing shall be under oath and recorded.

\* \* \* \* \*

The hearing examiner shall make the following determinations:

(1) Whether the member has suffered an injury or illness of such a nature as to preclude the member from the further performance of the duties of his job classification in the employ of Baltimore City.

(2) If the claim is for special disability benefits, whether the *physical incapacity is the result of an injury* arising out of and in the course of the actual performance of duty, without willful negligence on his part, and whether such disability qualifies under the provisions of Section 34(e). *If such claim is filed by a member who joined this system on or after July 1, 1979, the hearing examiner shall additionally determine whether such disability resulted from an injury that occurred within five (5) years of the date of the member's application.*

(Emphasis added). Section 34, which covers the two types of disability benefits, states in pertinent part:

(c) Ordinary disability retirement benefit. Any member who has acquired five (5) or more years of service and who has been determined by a hearing examiner to be mentally or physically incapacitated for the further performance of the duties of the member's job classification in the employ of Baltimore City, and that such incapacity is likely to be permanent, shall be retired by the Board of Trustees on an ordinary disability retirement, not less than thirty (30) and not more than ninety (90) days next following the date of filing his application for ordinary disability retirement benefits.

\* \* \* \* \*

(e) Special disability benefits. Any member who has been determined by the hearing examiner to be totally and permanently incapacitated for the further performance of the duties of his job classification in the employ of Baltimore City, as the result of an injury arising out of and in the

course of the actual performance of duty, without willful negligence on his part, shall be retired by the Board of Trustees on a special disability retirement. *For any employee who became a member on or after July 1, 1979, any claim for special disability benefits must be filed within five (5) years of the date of the member's injury.*

(Emphasis added).

We think it plain that the City Council, while not defining the terms anywhere in the City Code as they apply to §§ 33(1) and 34(e), made a distinction in meaning between the terms "injury" and "disability" or "incapacity." First, § 33(1), in describing both the requirements for submitting a disability application to the Panel of Hearing Examiners and the role of the hearing examiner, does not use the terms interchangeably. The applicant must state that "the *disability resulted from an injury* that occurred within five (5) years of the date of his application." (Emphasis added). Section 33(1) also requires the hearing examiner to "determine whether *such disability resulted from an injury* that occurred within five (5) years of the date of the member's application." (Emphasis added). Section 34(e) is phrased similarly, but not identically. Without consequence to this case, it uses the term "incapacity" rather than "disability." In *Pillsbury v. United Eng'g Co.*, 342 U.S. 197, 199–200, 72 S.Ct. 223, 224, 96 L.Ed. 225 (1952), the Supreme Court stated, in addressing a federal breed of disability compensation:

> [w]e are not free, under the guise of construction to amend the statute by inserting therein before the word "injury" the word "compensable" so as to make "injury" read as if it were "disability." Congress knew the difference between "disability" and "injury" and used the words advisedly. This view is especially compelling when it is noted that the two words are used in the same sentence of the limitations provision; therein "disability" is related to the right to compensation, while "injury" is related to the period within which the claim must be filed.

 Here, the term "disability" relates to the accrual of the right to receive compensation, meaning the date that Petitioner could apply for special disability benefits, while the term "injury" begins the point in time when the statute of limitations begins to run, thus starting the five year period within which the injured employee's claim must be filed.[6] We hold, therefore, that "injury" and "disability" (or incapacitation) for the purposes of § 33(1) and § 34(e) are separate in meaning "both practically and in the contemplation of the law." *See Bethlehem Steel Co. v. Ruff,* 203 Md. 387, 395, 101 A.2d 218, 221 (1953); *Blanding v. J.H. Andrews and Sons,* 36 Md.App. 14, 20, 373 A.2d 19, 23 (1977).

Moreover, the City Council's intent to distinguish in meaning and application the terms "injury" and "disability" is further illustrated by examining the availability of the two types of disability benefits. The remedial purpose of the retirement system here is to provide at least some benefits to disabled fire and police employees regardless of the source of the disability. The difference between the two benefits lies in the level of benefits received. Special disability benefits, available to police injured on the job, provide higher compensation than ordinary disability benefits. From the language of the Code, however, it is obvious that the City Council, in seeking to provide greater benefits to fire and police employees injured on the job, established greater, or at least different, hurdles for an employee to qualify for special disability benefits. We noted this higher or different level of proof as follows:

---

**6.** We cannot say that the City Council, in drafting § 33(1), meant instead to require that the applicant for special disability benefits must state that the "disability resulted from a disability [or incapacitation] that occurred within five (5) years of the date of his application" or that the hearing examiner must "determine whether such a disability resulted from a disability [or incapacitation] that occurred within five (5) years of the date of the member's application." Nor are we convinced that § 34(e) was meant to state "[f]or any employee who became a member on or after July 1, 1979, any claim for special disability benefits must be filed within five (5) years of the date of the member's disability [or incapacitation]."

The distinction in terms of eligibility between the two sections lies with the source of the injury which results in disability: if the *injury arose out of or in the course of the actual performance of duty,* then the claimant who is totally incapacitated is entitled to special disability benefits; if the injury was caused by any other means, then the claimant who is totally incapacitated is entitled to ordinary disability benefits.

*Mayor of Baltimore v. Hackley,* 300 Md. 277, 289, 477 A.2d 1174, 1180–81 (1984)(emphasis added). Indeed, an applicant for special disability benefits must show, by a preponderance of the evidence, that the injury arose from his or her police duties. *See* § 33(1). Ordinarily such a burden requires proof of a work-related injury at a discrete point in time. This proof requirement suggests a situation ripe for legislative imposition of a statute of limitations. There is no question that the City Council made a significant change to §§ 33(1) and 34(e) by adding the five year limitation period that did not exist before the passage of Ordinance 1126 on 27 June 1979.[7] By setting a five year limitation within which an applicant must file a special disability claim for a work-related injury, certain practical and administrative difficulties that may arise after an extended lapse of time between injury and the onset of disability are eliminated. Without a time limitation, a hearing examiner might be confronted with difficult determinations of the relationship between an ancient injury and a present permanent disability. *See Vest v. Giant Food Stores, Inc.,* 91 Md.App. 570, 585–86, 605 A.2d 627, 635 (1992). In contrast, a claim for ordinary disability benefits under § 34(c) requires no proof of a work-related injury and the date of injury is inconsequential in determining whether the applicant is eligible for disability retirement.

---

**7.** Council Bill No. 1027, enacted as Ordinance No. 1126, provided in one of its earlier reiterations a two year statute of limitations from the date of injury to the date of filing an application for special disability benefits.

"This Court consistently has presumed that general recodifications of statutes ... are for the purpose of clarity only and not substantive change, *unless the language of the recodified statute unmistakably indicates the intention of the Legislature to modify the law.*" *DeBusk*, 342 Md. at 444, 677 A.2d at 79 (emphasis added). If we accepted Petitioner's argument, that the date of injury is the date of permanent disability, we essentially would be second-guessing and nullifying the City Council's apparent and legitimate policy objective to extinguish potential claims arising from work-related injuries after the five year mark.[8]

We reject Petitioner's argument that by not equating "injury" with "disability" the "Court of Special Appeals has created a damaging precedent in its decision which encourages employers to take advantage of their employees' ignorance about the nature of their injury, and fosters a flood of frivolous claims from employees that, while not yet entitled to receive any benefits, will file as a matter of course in order to preserve any later possible claim." Indeed, the City Council's intent, while providing disability retirement for injured police workers, focuses on retaining or returning the employees in the workforce where possible. For example, § 34(g)(1) creates a procedure for re-examining beneficiaries retired on disability. It states, in pertinent part:

The Panel of Hearing Examiners may, at its discretion but not more frequently than once in any one year, require any retired member, who is receiving a disability retirement allowance and who has not yet attained age fifty-five (55), to undergo a medical examination to determine whether he has become *fit to resume duties* in the classification in which he was performing duties at the time of his retirement ...

---

**8.** We find the federal and out-of-state cases cited by Petitioner that equate "injury" with "disability" to be unpersuasive because the statutes in those cases are substantially different than the one at issue here. *See, e.g., Paducah Marine Ways v. Thompson*, 82 F.3d 130 (6th Cir. 1996); *Hartman v. Ouellette Plumbing & Heating Corp.*, 146 Vt. 443, 507 A.2d 952 (1985); *Wyoming State Treasurer v. Barnes*, 587 P.2d 214 (Wy.1978).

The Panel of Hearing examiners shall thereafter submit its determination to the head of the department in which the retiree was employed at the time of his retirement, and in the case of classified employees, to the Civil Service Commission. For purposes of re-employment, the retiree shall be treated by the head of his department and by the Civil Service Commission as if he were an employee on leave of absence without pay. Until such time as he is actually re-employed he shall continue to receive his disability retirement allowance.

\* \* \* \* \*

Should a disability retiree who has been certified as fit for the further performance of his duties refuse to accept an offer of re-employment ... all rights in and to his pension shall be *revoked* by the Board of Trustees, upon recommendation made by the Panel of Hearing Examiners. Should a disability retiree refuse to submit to the medical examinations herein provided for, his allowance may be discontinued until the withdrawal of said refusal, and should his refusal continue for one year, all rights in and to his pension shall be revoked by the Board of Trustees, upon recommendation made by the Panel of Hearing Examiners.

(Emphasis added). The statute provides authority to the Board to require medical checkups once a year on employees claiming disability benefits. If a disability is determined to be no longer permanent, and the employee is given the option to return to work and refuses to do so, he or she will be denied further disability benefits. The system is structured to encourage employees to work instead of collect disability payments.

The police department in the instant case made every effort to accommodate Petitioner, following her injury, with lighter duty assignments when her back injury caused her pain and limited her ability to perform her duties. Such efforts to retain injured officers in the workforce are not unheard of with regard to the Baltimore City Police Department. *See*

*Hackley v. Mayor of Baltimore,* 70 Md.App. 111, 119, 519 A.2d 1354, 1358 (1987).

Furthermore, we have rejected the notion that statutes of limitations, similar to the present statute, are illogical or irrational in the sense that they destroy a potential claim for disability before the disability arises. Statutes of limitations re-enforce predictability, which is a cornerstone of such benefit statutes. *See DeBusk,* 342 Md. at 440, 677 A.2d at 76. We explained in *DeBusk,* in the context of a workers' compensation case, that:

> Predictability and administrative ease, in the workers' compensation statutory plan as in all things, come at the price of *some* flexibility in unique or unusual circumstances. Objective standards and bright-line rules such as statutes of limitations are the very keys to predictability, in the sense that everyone is treated in the same manner and everyone knows or can discover the rules in advance of their application. By their very nature, though, such rules and standards cannot make exceptions for every scenario which might arise. First, no lawmaker could construct a statute which foresaw each individual application of the statute and exception which might present itself. In addition, a statute which attempted to address not only the rule but all its possible exceptions would likely lose its valuable characteristic of predictability, because it would be that much more subject to manipulation in a courtroom than a statute which merely stated the rule and any major exceptions. Moreover, bright-line rules by definition cannot depend upon a factfinder's case-by-case assessment of the subjective knowledge of a person.

> A statute of limitations which is triggered by an externally verifiable date is a classic example of an objective, bright-line rule which fosters predictable outcomes in otherwise unpredictable situations.

342 Md. at 438–39, 677 A.2d at 76 (emphasis in original).

 Petitioner's undisputed date of injury within the meaning of §§ 33(1) and 34(e) was 13 February 1992 and that

is the date the statute of limitations began to run on the filing of any claim for special disability benefits. "The principle that, when the Statute of Limitations begins to run, nothing will stop or impede its operation, while not immutable under all circumstances, is still the general legal approach." *Burket*, 241 Md. at 429, 216 A.2d at 912–13 (citations omitted). We acknowledge that permanent disability may occur after the five year limitation period and that in some circumstances, such as Petitioner's situation, the strict application of the statute results in excluding her from a disability benefit that she might very well deserve in an unregulated universe. Indeed, the record here seems clear that Petitioner was not malingering by pretending to be ill or injured in order to avoid work. *See Board of Trustees of Fire and Police Employees Retirement System of Baltimore v. Ches*, 294 Md. 668, 679, 452 A.2d 422, 428 (1982). The statute of limitations, however, which excludes Petitioner from receiving her special disability benefits, was enacted by the City Council, not by this Court. We will not modify the disability system *ad hoc* to suit our sensibilities and pivot around the legislature's true intentions.[9]

## II.

Petitioner argues in the alternative that, if her date of injury under §§ 33(1) and 34(e) is 13 February 1992, she nonetheless substantially complied with the filing requirement by mailing her application to Respondent on 12 February 1997, one day before the statute of limitations would bar her claim. She states:

> The application mailed on February 12, 1997, was signed and dated February 12, 1997, by the [Petitioner]. [Respondent] acknowledged receipt of the application on February 18, 1997, by letter dated February 19, 1997, which was sent to [Petitioner's prior] attorney along with the application

---

9. We decline Petitioner's invitation to apply the "discovery rule" in this case. Her date of original injury is undisputedly 13 February 1992. We need not address, nor compare, her situation with that of a latent injury.

lacking notarization. Thereafter, a notarized application was docketed as received by [Respondent] on February 25, 1997. Therefore, [Respondent] was notified of [Petitioner's] application only five days after it claims limitations expired on February 13, 1997, and received the properly notarized application only seven days after it was first notified of the claim.

It is unfortunate that the mailing of [Petitioner's] application for special disability benefits occurred just prior to Valentine's Day and President's Day weekend. As the letterheads of both [Petitioner's] prior attorney and the Retirement System demonstrate, both parties' addresses are located in the same zip code. Therefore, under usual circumstances, [Petitioner's] application would have been received by [Respondent] the day after it was mailed, and been timely by [Respondent's] standards. However, the unusually heavy mail which flows around a holiday such as Valentine's Day, as well as the following President's Day weekend, in which there was no mail on President's Day Monday, explains the surprising delay in [Respondent's] receipt of the application, which did not occur until on February 18, 1997, the Tuesday after President's Day. The reasonableness of [Petitioner's prior] attorney in expecting that the application would be received on February 13, 1997, the day after it was mailed, is supported by well recognized legal presumptions for mail receipt. Evidence that mail was properly addressed, stamped, and mailed "raises a presumption that it reached it [sic] destination at the *regular* time and was received by the person to whom it was addressed." [citations omitted][emphasis by Petitioner]. Accordingly, [Petitioner's prior] attorney's belief that the application would be received the day after it was mailed to an address in the same zip code, demonstrates substantial compliance in filing by February 13, 1997.

Furthermore, although the application was not notarized, it was complete in all other manners, as well as dated and signed by the [Petitioner]. Therefore, [Respondent] had notice of [Petitioner's] claim in every respect upon its

receipt of the application. Under such circumstances and in light of the purpose of statutes of limitation, as previously quoted, [Petitioner's] application was in substantial compliance with the limitations period enumerated in Article 22, § 34(e).

We find the doctrine of substantial compliance inapplicable to this case. "We have long adhered to the principle that where the legislature has not expressly provided for an exception in a statute of limitations, the court will not allow any implied or equitable exception to be engrafted upon it." *Booth Glass Co., Inc. v. Huntingfield Corp.*, 304 Md. 615, 624, 500 A.2d 641, 645 (1985). *See also Colao v. County Council of Prince George's County*, 346 Md. 342, 362–63, 697 A.2d 96, 106 (1997); *Hecht*, 333 Md. at 333, 635 A.2d at 399. Petitioner was required to *file*, not mail, her claim of disability within five years of her date of injury on 13 February 1992. *See* § 34(e). Therefore, she was required to file her application with Respondent on 13 February 1997. It is clear that she did not. Respondent received Petitioner's application on 18 February 1997, five days after it was due. Petitioner has not cited us to, nor have we discovered, any part of Article 22 as it applies to the fire and police retirement system that grants an exception to the five year statute of limitations for §§ 33(1) and 34(e). We may not craft one for her judicially. As the Court of Special Appeals elaborated:

> [We do] not allow any implied or equitable exception to be engrafted on the statute of limitations merely on the ground that such exception would be within the spirit of the statute. To the contrary, [we look] to the public policy served by the defense of limitations, and permit[ ] it to function arbitrarily, without discrimination between the just and unjust claim, or the avoidable and unavoidable delay.

*Beall*, 97 Md.App. at 602, 631 A.2d at 508 (citations omitted). *See also DeBusk*, 342 Md. at 438–39, 677 A.2d at 76.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY PETITIONER.

ELDRIDGE, J., dissents.

ELDRIDGE, Judge, dissenting:

For the reasons urged by the petitioner and outlined at the beginning of Part I of the majority's opinion, the Court's interpretation of the Baltimore City statute is harsh and makes no sense as a matter of public policy. The majority's interpretation violates the settled principle that courts should adopt " 'that construction [of a statute] which avoids an illogical or unreasonable result,' " *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628, 632 (1987), quoting *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730, 732 (1986). I would reverse.